## A92A1196. ROBINWOOD, INC. v. BAKER.
### (425 SE2d 353)

BEASLEY, Judge.

Robinwood, Inc. and Baker entered into a contract for labor, which was terminated several years later. Robinwood sought temporary and permanent injunctions and unspecified damages; Baker counterclaimed. The court on its own motion directed a verdict for defendant Baker as to Robinwood's damage claim and in favor of Baker on her counterclaim in the amount of $86.50. Robinwood seeks reversal as to its claim.

1. Citing *Heuer Industrials v. Crum*, 202 Ga. App. 675 (415 SE2d 307) (1992), and OCGA § 5-6-35 (a) (6), appellee has filed a motion to dismiss the appeal. The motion is denied.

An application is required under OCGA § 5-6-35 (a) (6) whenever an appeal is taken from a judgment of $10,000 or some lesser sum. *Brown v. Assoc. Fin. Svcs. Corp.*, 255 Ga. 457 (339 SE2d 590) (1986). OCGA § 5-6-35 (a) (6) sets out the correct method of appeal from monetary judgments ranging from one cent to $10,000. *City of Brunswick v. Todd*, 255 Ga. 448 (339 SE2d 589) (1986). As a general rule, the provisions of OCGA § 5-6-35 (a) (6) do not apply to an appeal from a judgment in favor of a defendant. *Motor Fin. Co. v. Davis*, 188 Ga. App. 291 (372 SE2d 674) (1988).

Robinwood's notice of appeal is from that part of the judgment entered against "the Plaintiff" and in favor of "the Defendant"; however, the judgment also awards $86.50 in favor of plaintiff-in-counterclaim against defendant-in-counterclaim. In determining whether an appeal falls within the ambit of the discretionary appeals procedure, the final judgment is considered in its entirety (cf. *City of Brunswick*, supra), and not merely in its various parts. See *Alexander v. Steining*, 197 Ga. App. 328 (1) (398 SE2d 390) (1990). It includes an award for defendant as to plaintiff Robinwood's claim or, in effect, a "zero" award for appellant as to its claim, as well as a small award on the counterclaim.

If this case involved solely the appeal of a "zero" award, there would be a right of direct appeal. See *Bales v. Shelton*, 260 Ga. 335 (391 SE2d 394) (1990); *City of Brunswick*, supra; *Rich v. McDonald Car &c. Leasing*, 180 Ga. App. 613 (349 SE2d 832) (1986), overruled on other grounds to the extent contrary, *Honester v. Tinsley*, 183 Ga. App. 146, 147 (1) (358 SE2d 295) (1987). In *Boatner v. Kandul*, 180 Ga. App. 234 (348 SE2d 753) (1986), judgment was entered on the jury verdict awarding plaintiff/appellee $450 on her claim and "0" to defendant/appellant on his counterclaim. We assumed jurisdiction over the direct appeal filed by appellant, holding: "Although none of appellant's enumerations specifically addresses the counterclaim, they generally contend error in the judgment rendered by the trial court,

which includes the zero verdict on appellant's counterclaim. Therefore, under *City of Brunswick v. Todd*, [supra], we must address this appeal." Id. at 234 (2); compare *Williams v. Opriciu*, 198 Ga. App. 663 (402 SE2d 744) (1991); *Honester*, supra; *Williams v. Charter Credit Co.*, 179 Ga. App. 721 (347 SE2d 635) (1986).

We do not construe OCGA § 5-6-35 (a) (6) as requiring an application for discretionary appeal when the "zero" award is on the main claim and the award on the counterclaim is under $10,000, but allowing direct appeal when the "zero" award is on the counterclaim and the award on the main claim is under $10,000. A statute must be construed to avoid an absurd result. See generally *Mansfield v. Pannell*, 261 Ga. 243 (404 SE2d 104) (1991). Accordingly, appellant/plaintiff was authorized to file a direct appeal as to the "zero" award on the main claim. OCGA § 5-6-34 (a); see *Boatner*, supra. The portion of the judgment pertaining to the counterclaim would be reviewable on direct appeal (to the extent any issues were not otherwise abandoned) pursuant to OCGA § 5-6-34 (d). See *Williams v. Opriciu*, supra.

2. Robinwood asserts the trial court failed to employ recognized rules of contract construction in concluding that the phrase "not less than two years" is definite, clear, and unambiguous, and by failing to submit the issue of the parties' contractual intent on this matter to the jury.

The employment contract provided: "Contractor [appellee Peggy Baker] further agrees that she shall not establish or purchase another personal care home in either DeKalb, Rockdale, or Newton County for a period not less than 2 years following the termination of this contract." The contract was prepared in final form by a local lawyer at the direction of Robinwood's president after the parties negotiated its terms.

The trial court held that the questioned phrase was plain, had "no cap" on the time it was to run, and that, as the words were not ambiguous, parol evidence of the party's intent would not be admissible to show ambiguity.[1] It directed a verdict on the ground that the questioned phrase in the clause was unenforceable as it was of indefinite duration, and that the remaining restrictive covenant in the contract also was unenforceable under the precedent of *Ward v. Process Control Corp.*, 247 Ga. 583, 584 (277 SE2d 671) (1981).

Robinwood had alleged in its complaint that in the agreement, which was attached as an exhibit, "Defendant . . . agreed that she would neither purchase nor establish a personal care home in Newton

---

[1] The trial court did afford Robinwood the opportunity to perfect the record by presenting, outside the jury's presence, testimony as to parol evidence. This proffer was the only evidence presented on the main claim; no evidence on it was presented to the jury at all.

County for a two year period from the date the agreement between the parties terminated. The agreement was terminated January 25, 1991." The complaint was filed February 26. Peggy Baker admitted these allegations in her answer. She also admitted that her husband had purchased a dwelling in Newton County but denied that she had announced her intention for them to use it as an elderly care home.

A month before trial, plaintiff amended its complaint and added Peggy's husband, Terry, as a defendant. It alleged again that Peggy Baker agreed in the attached agreement "that she would neither purchase nor establish a personal care home in Newton County for a two-year period from the date the Agreement between the parties terminated. The agreement was terminated on January 25, 1991." Defendants in their answer admitted these allegations and that Terry Baker purchased a dwelling in Newton County but they denied opening the dwelling as an elderly care home on or about February 25.

In this manner the meaning of the time period during which the restriction was to run was established as fact by the parties, conclusively. OCGA § 9-11-8 (d); *Martin v. Pierce,* 140 Ga. App. 897 (1) (232 SE2d 170) (1977). The case was tried on the pleadings, without any pretrial order.

It was clear to the parties, as demonstrated by the pleadings, and it is clear as stated on the face of the document, Peggy Baker "agree[d] that she shall not establish or purchase another personal care home in either DeKalb, Rockdale, or Newton Counties for a period of not less than two years following the termination of this Contract."

The two points fixed for the restricted period were the date of termination and two years thereafter. The restriction was for two years, period. That meant that at any time after two years from the determinable date of termination, Peggy Baker could establish or purchase another personal care home or homes in the three-county territory. When it is the latter of two points in time, as here, "not less than two years" means two years. "Not less than" as used in the sentence merely emphasizes that the restricted period is two years and not a day less. It is the employer saying, "You have agreed not to compete for two years, and when the time comes to measure it, I will not accept anything less than two years."

This common vernacular method of focusing on a particular highlights the fact that it is a deliberately chosen one. When used at the ending point, "not less than" means that particular number, and no other "maximum" is stated because there is none. It would not make sense for the wording to be that Baker promises she will not open a home for a period of not less than two years after her termination nor more than, say, three years. That would be a very roundabout way of saying that she would not open a home for three years after termina-

tion. "Not less than two years" would have no meaning, as it would not measure any operative event.

Nor can it logically be construed to mean that the restrictive period does not *begin* at the end of two years and run to some undefined future date. It is illogical to conclude that the restriction only *began* at the end of two years and allowed her to open a competing establishment at any time within the first two years after ending her employment. Not only is it illogical, but such a construction ignores the contract's words "from the date of termination." As stated in the contract, the period is measured from the date of termination; it begins then and ends at the expiration of two years. It *begins* at termination and ends at two years.

When used together with a "not more than" clause, a "not less than" clause prescribes a minimum *beginning* point of reference. An example is that a robber "shall be punished by imprisonment for not less than one nor more than 20 years." OCGA § 16-8-40 (b). An example of the law's use of a phrase comparable to "not less than" as the ultimate operative point is found in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991): A defendant may win summary judgment by showing "that there is no evidence sufficient to create a jury issue on *at least* one essential element of plaintiff's case." More is of no significance, just as in the Robinwood-Baker contract, more than two years is of no significance.

The application of the appropriate rules of contract construction leads to the conclusion that the trial court erred in directing a verdict on the ground that the phrase had an unambiguous opposite meaning. The contract should be enforced according to the stated intention of the parties when it was made.

3. It not having been established that the two-year period is unreasonable in time, the rule in *Ward v. Process Control Corp.*, supra at 584 (2), does not apply to invalidate Peggy Baker's other covenant that she "will in no way seek to influence or in any other way attempt to take any of the . . . guest residents to any other comparable business."

*Judgment affirmed in part and reversed in part. McMurray, P. J., Carley, P. J., Pope, Cooper and Johnson, JJ., concur. Sognier, C. J., Birdsong, P. J., and Andrews, J., dissent.*

BIRDSONG, Presiding Judge, concurring in part and dissenting in part.

I concur in Division 1, but dissent as to Divisions 2 and 3 for the following reasons:

1. Appellant asserts the trial court failed to employ recognized rules of contract construction in concluding that the phrase "not less than two years" is definite, clear, and unambiguous, and by failing to

submit the issue of the parties' contractual intent as to this matter to the jury. The trial court held that by the plain terms of the contract, the questioned phrase had "no cap" on the time it was to run, and that, as the words were not ambiguous, parol evidence of the party's intent would not be admissible to show ambiguity. The trial court further directed a verdict against appellant as to its claim on the grounds that the questioned phrase in the clause was unenforceable as it was of indefinite duration, and that the remaining restrictive covenant in the contract also was unenforceable under the precedent of *Ward v. Process Control Corp.*, 247 Ga. 583, 584 (277 SE2d 671).

I agree with the trial court that the phrase "for a period not less than two years" is per se clear and unambiguous and imposes "no cap." " 'Where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intent of the parties.' " *Howell Mill/Collier Assoc. v. Pennypacker's*, 194 Ga. App. 169, 173 (3) (390 SE2d 257). The restrictive covenant in question, as found by the trial court, failed to contain a date (time) of termination on its face. "With respect to a negative covenant ancillary to a contract of employment, it is essential to the validity of the contract that it contain reasonable limitations both as to time and territory, and that it be 'not otherwise unreasonable.' . . . Whether the restraints imposed by an employment contract are reasonable is a question of law for determination by the court." *Orkin Exterminating &c. v. Dewberry*, 204 Ga. 794, 802 (1) (51 SE2d 669), overruled in part on other grounds, *Barry v. Stanco &c. Prods.*, 243 Ga. 68, 71 (3) (252 SE2d 491); compare *Jenkins v. Jenkins Irrigation*, 244 Ga. 95, 98 (2) (259 SE2d 47) (covenant must be strictly limited in time and territorial effect and otherwise reasonable). "If it is not [strictly] limited with regard to either time, territory or scope of activity, the entire covenant fails. Georgia does not employ the 'blue pencil theory of severability' when it comes to covenants contained in employment contracts." *Arnall Ins. Agency v. Arnall*, 196 Ga. App. 414, 416 (1) (396 SE2d 257). Accordingly, the trial court was correct in declaring the entire covenant in question as unenforceable.

Moreover, if the questioned phrase does not mean what it plainly says, as is the inherent conclusion of the majority when they resort to a less than commonly accepted "vernacular" phrase interpretation to support their holding, then the questioned phrase is ambiguous (see generally *McGee v. Southern Gen. Ins. Co.*, 194 Ga. App. 783, 784 (391 SE2d 669)). Appellant's assertions notwithstanding, the issue of ambiguity would not automatically become a jury question. "The construction of a contract is a question of law for the court, and 'even ambiguous contracts are to be construed by the court unless an ambiguity remains after application of applicable rules of construction.' " Id.; accord *Kusuma v. Metametrix*, 191 Ga. App. 255 (2) (381 SE2d

322). Thus, a contract is to be construed by the court where the language thereof is undisputed but the meaning of that language is in dispute. *Avanti Group v. Robert Half &c.*, 198 Ga. App. 366, 368 (401 SE2d 576). As unequivocally recognized by the trial court, a well-established rule of contract construction "is that an ambiguous contract will be construed most strongly against its maker." *Hunsinger v. Lockheed Corp.*, 192 Ga. App. 781, 784 (1) (386 SE2d 537). After examining the employment contract in its entirety and applying the above rule of construction, any ambiguity would be resolved against appellant and it becomes clear that the questioned restrictive covenant failed to contain a specific limitation as to time. Compare *McCann v. Glynn Lumber Co.*, 199 Ga. 669 (1) (34 SE2d 839) (lease contract after properly construed is not ambiguous in the sense that parol evidence would be admissible). Thus, assuming the questioned phrase initially was ambiguous (which seems even more plausible considering this issue had to be addressed in a whole court opinion), we would not reverse the trial court as the ambiguity could be resolved by application of well-recognized provisions of contract construction. And we would not reverse the correct holding of a trial court regardless of the reason thereto attributed. *National Consultants v. Burt*, 186 Ga. App. 27, 33 (2) (366 SE2d 344).

2. Appellant asserts the trial court erred when it also ruled unenforceable the contract language prohibiting appellee from taking from appellant elderly care residents.

I believe that the trial court did not err in determining this restrictive covenant also to be unenforceable under the controlling precedent of *Ward*, supra. The restrictive covenant here at issue pertinently provided that the contractor "will in no way *seek to influence or* in any other way attempt *to take* any of the . . . guest residents *to any other comparable business.*" (Emphasis supplied.) This restrictive covenant in substance is tantamount to a covenant both not to solicit and not to compete, and it is found in the same paragraph of the contract as is the unenforceable covenant not to compete above discussed. "If any covenant not to compete within a given employment contract is unreasonable either in time, territory, or prohibited business activity, then all covenants not to compete within the same employment contract are unenforceable. . . . In the present case both the covenant 'not to solicit' and the covenant 'not to compete' are covenants not to compete for purposes of applying the above rule." *Ward*, supra at 584 (2).

*Durham v. Stand-By Labor*, 230 Ga. 558, 562 (198 SE2d 145) (covenant not to compete and covenant not to disclose can be independently maintained under same employment contract) and *Lane Co. v. Taylor*, 174 Ga. App. 356 (330 SE2d 112) (covenant of no-hire is severable from covenant not to compete) are distinguishable from

this case and thus are not persuasive.

3. Additionally, the record contains a prior order of the trial court denying appellant's motion for temporary restraining order (TRO). This motion refers to certain evidence apparently adduced at a hearing which would establish that even if the above restrictive covenants had been valid, the operative facts failed to establish any violation of the covenant's terms. Neither the TRO hearing transcript nor the trial transcript has been included with this appeal; accordingly, this court has only a paucity of evidence before us pertaining to these apparently operative case facts. See generally *Nodvin v. West*, 197 Ga. App. 92, 97 (3c) (397 SE2d 581); *Atlanta Cas. Ins. Co. v. Crews*, 197 Ga. App. 48, 51 (3) (397 SE2d 466).

4. Further, the majority relies upon certain averments made in the complaint and amended complaint, and admitted in the answers thereto, to bolster their contention that the questioned provision of the contract was only to run for a two-year period. In support of this contention, they cite as cornerstone authority OCGA § 9-11-8 (d) and *Martin v. Pierce*, 140 Ga. App. 897 (1) (232 SE2d 170).

I agree that if appellee/defendant is to be conclusively bound by her answer admitting averments in the complaint and amended complaint, it would have to be under the precedent of *Martin v. Pierce*, supra, and related cases. Examination of this precedent reveals that the binding of a party to averments made or admitted in pleadings is predicated on the doctrine of admissions in solemn judicio. I cannot agree that appellee has made such a binding admission. At best the averments of appellant/plaintiff admitted in the answer of appellee/defendant, regarding the time limitations in the contract would, at most, constitute a *conclusion or opinion of the parties as to the legal effect of the instrument sued on, and would not be binding upon the trial judge as to his interpretation of the terms of the contract as a question of law. Southern Bus. Machines v. Norwest Fin. &c.*, 194 Ga. App. 253, 257-258 (2) (390 SE2d 402); *Howell Mill/Collier Assoc. v. Pennypacker's*, supra at 172 (2). Assuming arguendo an enforceable admission had occurred, inherent within the procedure employed by the trial court in determining contract construction was permission for appellee/defendant to withdraw that admission. Thus, the trial court was free to interpret the contract in accordance with those rules of contract construction or interpretation thereto applicable.

Assuming the phrase at issue was also capable of being reasonably interpreted using the so-called "common vernacular method" at most this establishes that the ill-chosen phrase is ambiguous (compare *Claussen v. Aetna Cas. &c. Co.*, 259 Ga. 333 (380 SE2d 686)) permitting the trial court to employ that construction which most strongly goes against the maker (*Hertz Equip. Rental Corp. v. Evans*, 260 Ga. 532, 533 (397 SE2d 692)).

Accordingly, I find the result reached by the trial court was not erroneous (*National Consultants*, supra), and that the judgment should be affirmed in its entirety.

I am authorized to state that Chief Judge Sognier and Judge Andrews join in this dissent.

DECIDED NOVEMBER 6, 1992.

*Paul S. Liston*, for appellant.
*John B. Degonia*, for appellee.