A93A2176. GREEN v. JOHNSTON REALTY, INC.
(442 SE2d 843)

COOPER, Judge.

Plaintiff/appellant is John Green d/b/a Green Development Company, a real estate developer who focused primarily on student housing. Plaintiff had worked primarily in the Athens, Georgia area, but in 1989 decided to expand his business to Statesboro, Georgia to develop a student housing facility near Georgia Southern University. Plaintiff approached Joe Johnston, a real estate agent and principal of defendant Johnston Realty, Inc., with the idea of developing a complex consisting initially of 24 four bedroom, four bathroom apartments. Plaintiff advised Johnston that his plan called for the initial construction

of 24 apartments by June 1990 ("Phase I") with an additional 32 apartments to be constructed by the fall of 1990 ("Phase II"). Each apartment was to rent for $900 and house four persons, who were each required to sign a separate lease agreement and provide a parental guarantee. Plaintiff also required that the potential lessees deposit a total of $1,000 as a security deposit on the apartment. Johnston told plaintiff that his company normally received a fee equal to one-half of the first month's rent for each apartment leased; however, plaintiff and Johnston came to an oral understanding that defendant would act as a leasing agent for Phase I and receive a fee of $5,000. Specifically, defendant was to act as a focal point for students to get information about the apartments and sign leases. It was also agreed that plaintiff would be responsible for advertising and that, in August 1990, plaintiff's property manager would assume all leasing responsibilities. Johnston assigned two of his sales agents to work on leasing the apartments in Phase I. Although the agents experienced some difficulty obtaining the parental guarantees, all 24 of the Phase I apartments were leased by June 1990. In June 1990, plaintiff began construction of Phase II, and defendant's agents began to look for tenants for the Phase II apartments. At one point plaintiff told the agents that he was having difficulty with the financing for Phase II, and the agents temporarily stopped trying to lease the units until the financial matter was resolved, at which time the agents resumed their efforts to lease the apartments in Phase II. By the beginning of the 1990-91 school year, the agents had been unable to lease the majority of the Phase II apartments. Plaintiff refused to pay defendant the agreed upon sum of $5,000 and subsequently filed suit against defendant, alleging breach of contract, negligence, negligent hiring and tortious interference with prospective economic relations. Defendant filed a counterclaim seeking the $5,000 plaintiff agreed to pay for the leasing of Phase I and additional compensation for the units in Phase II for which defendant secured tenants. Defendant moved for summary judgment on the main claim and the counterclaim, and the trial court granted the motion and awarded defendant damages in the amount of $5,541.40 for the leasing of the twenty-four Phase I units and $1,438.38 for the seven Phase II units leased. Plaintiff appeals from that order. Although the judgment entered in favor of defendant on the counterclaim is less than $10,000, the judgment in favor of defendant on the main claim is in effect a "zero" award for plaintiff. Therefore, an application for discretionary appeal is not required. See *Robinwood, Inc. v. Baker*, 206 Ga. App. 202 (1) (425 SE2d 353) (1992).

1. Plaintiff first contends that the trial court erred in failing to construe material facts in his favor as the non-movant. "On summary judgment, movant has the burden of showing there is no genuine is-

sue as to any material fact and that he is entitled to a judgment as a matter of law. When, as in the instant case, movant is the defendant, he has the additional burden of piercing the plaintiff's pleadings and affirmatively negating one or more essential elements of the complaint. In ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. Thus, summary judgment is appropriate when the court, viewing all the facts and reasonable inferences from those facts in a light most favorable to the non-moving party, concludes that the evidence does not create a triable issue as to each essential element of the case." (Citations and punctuation omitted.) *McGinty v. Golden's &c. Co.*, 208 Ga. App. 248, 249 (1) (430 SE2d 185) (1993).

With respect to plaintiff's claim for breach of contract, the trial judge found that there was an agreement between plaintiff and defendant for defendant to use its best efforts to lease the apartments in Phase I, but there was no agreement with respect to the apartments in Phase II. Johnston testified in his deposition that he agreed to help plaintiff lease the 24 apartments in Phase I by acting as a focal point where students could get information and sign leases. Johnston also testified that for this service he was to be paid a flat rate of $5,000, although his normal fee was one-half of the first month's rent on each apartment leased. Johnston stated that his responsibility was to end in August 1990 when plaintiff's property manager took over the leasing responsibilities. Johnston further testified that there was no agreement as to the apartments in Phase II, and although Johnston's staff attempted to secure tenants for the units in Phase II, Johnston assumed that the leasing of these units would be the responsibility of plaintiff's property manager. Johnston also stated that through the efforts of his sales staff he was able to secure lease agreements for thirty-one apartments, all of the Phase I apartments and seven of the Phase II apartments.

There is no evidence in the record that defendant breached its agreement with respect to the leasing of the apartments in Phase I. Furthermore, plaintiff testified in his deposition that there was never any negotiation about payment for leasing the apartments in Phase II and he assumed they would be leased under the same terms as those in Phase I. "In accordance with OCGA § 13-3-1, to form a valid contract there must be a subject matter, a consideration, and mutual assent by all parties to all the terms." *Lamb v. Decatur Federal &c. Assoc.*, 201 Ga. App. 583, 585 (1) (411 SE2d 527) (1991). "Further, as price is an essential element of a valid contract, an alleged contract on which there is no firm agreement as to the price is unenforceable." (Citations omitted.) *Bellsouth &c. v. McCollum*, 209 Ga. App. 441,

444 (2) (433 SE2d 437) (1993). The testimony of both plaintiff and Johnston reveals that there was never an agreement as to how much defendant would be paid for the leasing of the Phase II apartments. (Green deposition, pp. 211-212; Johnston deposition, pp. 94-95.) Accordingly, the trial court's grant of summary judgment on plaintiff's claim for breach of contract was proper.

2. Plaintiff also alleges that defendant negligently performed its duty to lease the 24 apartments in Phases I and II. There is no evidence that defendant was negligent in leasing the apartments in Phase I because defendant secured leases for those apartments. With regard to the Phase II apartments, defendant had no contractual duty to lease those apartments. See Division 1, supra. However, in spite of the difficulty defendant's agents had in obtaining parental guarantees, defendant attempted to and was successful in leasing some of the Phase II apartments. There is no evidence that defendant or his agents were negligent in their undertaking to lease the units in Phase II. Accordingly, summary judgment was properly granted to defendant on plaintiff's claim of negligence.

3. Plaintiff also argues that the trial judge erred in granting summary judgment to defendant on his claim of negligent hiring and retention of employees. Specifically, plaintiff argues that the sales agents assigned to lease the apartments were inexperienced in the leasing of large apartment complexes. "The appropriate standard of care in a negligent hiring/retention action is whether the employer knew or should have known the employee was not suited for the particular employment." (Citation and punctuation omitted.) *Kemp v. Rouse-Atlanta, Inc.*, 207 Ga. App. 876, 878 (1) (429 SE2d 264) (1993). Regardless of whether defendant knew the agents had no experience in leasing large apartment complexes, there was no evidence that defendant's sales agents were incompetent or incapable of leasing the apartments. To the contrary, the agents were successful in leasing all of the apartments in Phase I and some of the apartments in Phase II. Nor was there any evidence that the agents intentionally failed to lease the apartments. Plaintiff failed to establish a claim for negligent hiring, and summary judgment was properly granted to defendant on this issue.

4. In two enumerations of error, plaintiff contends the trial court erred in granting summary judgment to defendant on plaintiff's claim of tortious interference with prospective economic relations. "To establish a cause of action for tortious interference with existing and prospective contractual relations, a claimant must show that the defendant (1) acted improperly and without privilege, (2) purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff, and (4) for which the plaintiff suffered some financial in-

jury. . . . The terms malicious or maliciously means any unauthorized interference or any interference without justification or excuse. This court has authorized the grant of summary judgment to a defendant on a tortious interference claim if the defendant pierces the pleadings with respect to any single element of the cause of action." (Citations and punctuation omitted.) *St. Mary's Hosp. v. Radiology Professional Corp.*, 205 Ga. App. 121, 124 (2) (421 SE2d 731) (1992). Notwithstanding whether plaintiff can establish a cause of action for tortious interference with prospective economic relations without first establishing a breach of contract (see *Cartin v. Boles*, 155 Ga. App. 248 (3) (270 SE2d 799) (1980)), plaintiff put forth no evidence that defendant acted maliciously. Consequently, summary judgment was properly granted to defendant on the tortious interference claim.

5. Finally, plaintiff argues that defendant was not entitled to summary judgment, including damages, on defendant's counterclaim. In Count I of its counterclaim, defendant alleged breach of contract and sought damages of $5,000 plus $541.40 in expenses for leasing the Phase I units. In Count II, defendant alleged a claim for quantum meruit and sought damages in the amount of $3,150 as the reasonable value of defendant's services for leasing seven of the Phase II units. The evidence was undisputed that by the beginning of the 1990-91 school year, defendant had leased the twenty-four apartments in Phase I, plus seven apartments in Phase II. Therefore, as to the Phase I units, defendant was entitled to summary judgment, including damages for plaintiff's breach of the oral agreement.

"Quantum meruit is an available remedy when there [is] no express stipulation as to the value of the services to be performed, and the compensation therefor necessarily [depends] upon an implied promise to pay." (Citation and punctuation omitted.) *Hardin v. Hunter*, 174 Ga. App. 756, 757 (2) (331 SE2d 83) (1985). Defendant contended in its counterclaim that the reasonable value of services for leasing the seven units in Phase II was $3,150, an amount equal to one-half of the first month's rent, or $450, for each apartment. However, the trial judge determined that defendant was only entitled to $1,458.38, a prorated amount based on the per unit fee that plaintiff agreed to pay for the Phase I units. The amount awarded as the reasonable value of defendant's by the trial judge is supported by the evidence. See *G. Carbonara & Co. v. Helms*, 205 Ga. App. 547, 548 (423 SE2d 36) (1992). Accordingly, we find no error with the award of damages on the counterclaim.

*Judgment affirmed. Beasley, P. J., and Smith, J., concur.*

DECIDED MARCH 16, 1994 —
RECONSIDERATION DENIED MARCH 30, 1994 —

*Adams & Ellis, Laura J. Tromly, Ronald C. Berry, Tracy O'Connell,* for appellant.
*Edenfield, Stone & Cox, Gerald M. Edenfield, Susan W. Cox,* for appellee.