A96A2390. STARGATE SOFTWARE INTERNATIONAL, INC. v. RUMPH et al.
A96A2391. ORION CEM, INC. et al. v. STARGATE SOFTWARE INTERNATIONAL, INC.
(482 SE2d 498)

BEASLEY, Judge.

Stargate sued Orion, its President Rumph, and former Stargate employees McDougall, Igwebuike, Jonkers, and Haberle, alleging nine specific counts: tortious interference with Stargate's employ-

ment contracts (naming Orion and Rumph as liable on this count); tortious interference with Stargate's contracts with Rayonier (Orion and Rumph); breach of employment contracts (McDougall, Igwebuike, Jonkers, and Haberle); violations of the Georgia Trade Secrets Act (Orion, Rumph, McDougall, Igwebuike, and Jonkers); conversion (Orion, Rumph, and McDougall); computer theft (Orion, Rumph, and McDougall); computer trespass (Orion, Rumph, and McDougall); RICO (Orion, Rumph, and McDougall); fraud (Orion and Rumph). Stargate also sought injunctive relief (Orion) and attorney fees under OCGA § 13-6-11 (all defendants).

The court granted Orion and Rumph summary judgment on the counts of tortious interference with Stargate's employment contracts, violations of the Georgia Trade Secrets Act, RICO, and attorney fees. It also granted Orion summary judgment as to the claim for injunctive relief, but Stargate has not appealed that ruling. The court denied Orion and Rumph summary judgment on the counts of tortious interference with Stargate's contracts with Rayonier, conversion, computer theft and trespass, and fraud. In Case No. A96A2390, Stargate appeals the grant of partial summary judgment to Orion and Rumph. In Case No. A96A2391, Orion and Rumph appeal the denial of summary judgment on the remaining grounds. The motion for summary judgment dealt only with Orion and Rumph. No other defendants are party to this appeal.

The evidence and all inferences and conclusions arising therefrom must be construed most favorably toward Stargate, the party opposing the motion. *Garmon v. Warehouse Groceries &c.*, 207 Ga. App. 89, 91 (1) (427 SE2d 308) (1993).

Stargate contracted with paper producer Rayonier on a number of projects to develop software to control industrial operations. In the course of performance, Stargate ran into difficulties, the nature of which is disputed but agreed by all to be at least somewhat financial. Rayonier was Stargate's only customer. At Rayonier's request, Stargate discussed with Orion, another service provider with which Rayonier had an ongoing relationship, the possibility of Stargate receiving financial assistance from Orion, but no action was taken. Rayonier then gave Stargate an ultimatum: either allow Orion to provide assistance on the project such that Stargate worked through Orion, or face cessation of payments by Rayonier. Rayonier would not allow Stargate to continue the project alone. In mid-December 1994 Smith, Stargate's Chief Executive Officer, began negotiating with Rumph, Orion's President, for the formation of a joint venture to complete the project.

Stargate and Orion never executed a joint venture agreement.[1] During a meeting on December 28, Rumph produced a handwritten, unsigned "eight-point plan" that indicated the focus of discussions to that date. One of those points was that Orion would hire Stargate's employees for continuation of the project. Smith and Rumph met again the next day, and Smith was to draft language for a proposed agreement.

Also on December 29, Orion sent letters to Rayonier proposing its completion of the projects with no mention of Stargate and without disclosing this to Smith. During the period Stargate and Orion were negotiating, Orion met with Stargate employee McDougall, also without disclosing this to Smith. At some point in the last week of December, Smith suggested to Stargate's employees that they become Orion employees and continue working on the Rayonier project at Stargate's offices.

At Smith and Rumph's next meeting on January 5, 1995, Stargate presented a draft "system implementation agreement" that Orion would not accept in that form. Rumph and Smith did agree on separate transactions for Orion to rent Stargate's Atlanta office for the month of January and for Orion to purchase certain computer equipment that had been used in Stargate's programming efforts. Stargate owned other computers Orion did not buy.

After the meeting of January 5, Smith left the Atlanta area, returning to Stargate's offices January 20. He discovered that all computers, not merely those sold to Orion, had been removed from the offices along with certain records and reported this as a theft to the police. Smith averred that at least one computer that had not been sold to Orion, that used by former employee Jonkers who was hired by Orion, had not been recovered or returned. Jonkers testified he took a computer from Stargate when he began working for Orion and continued to use it in Orion's employ. There was also evidence Igwebuike had taken a Stargate machine in his capacity as an Orion employee to be able to work on the projects.

*Case No. A96A2390*

1. Stargate contends the court erred in granting summary judgment on the claim of tortious interference with employment contracts. The court ruled Orion and Rumph could not be liable because Orion was not a stranger to those contracts due to Stargate's encouraging its employees to work for Orion.[2]

---

[1] The court ruled the evidence showed no contract between Stargate and Orion was ever formed, a ruling neither side enumerates as error.

[2] There is no suggestion that Rumph has any liability on any count except for actions he

" 'To establish a cause of action for tortious interference with existing and prospective contractual relations, a claimant must show that the defendant (1) acted improperly and without privilege, (2) purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff, and (4) for which the plaintiff suffered some financial injury. . . . The term malicious or maliciously means any unauthorized interference or any interference without justification or excuse.' " (Citation omitted.) *Green v. Johnston Realty*, 212 Ga. App. 656, 659-660 (4) (442 SE2d 843) (1994).

Stargate's claim was based on the theory that Orion and Rumph induced Stargate employees to breach their contracts with Stargate. Smith testified he told Stargate employees to work for Orion on the project only because he understood an agreement would eventually be reached between Stargate and Orion. Smith's expectation in this regard has no effect. As he told Stargate's employees they should become Orion employees, any interference with their status as Stargate employees by Orion or Rumph was privileged and, as a matter of law, proper. Summary judgment as to this claim was correct.

2. Stargate contends the court erred in granting Orion and Rumph summary judgment on its claim of misappropriation of trade secrets. OCGA § 10-1-763 (a). The term "trade secret" can apply to data or a program, OCGA § 10-1-761 (4), both of which Stargate claims were its trade secrets. A trade secret must also be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." OCGA § 10-1-761 (4) (B). Stargate asserts the software and documents it had prepared for the Rayonier projects were trade secrets and that Orion and Rumph misappropriated them through the work of former Stargate employees Orion hired and by taking computer software and program documentation.

Orion and Rumph respond that Stargate's claims to possess trade secrets are not cognizable under the statute because Stargate did not take reasonable efforts to maintain the confidentiality of the information allegedly misappropriated. See *Smith v. Mid-State Nurses*, 261 Ga. 208, 209 (403 SE2d 789) (1991). Stargate contends it had employees sign agreements that included confidentiality provisions, but it put only its agreement with McDougall in the record to the trial court; the other employees signed different form agreements. Stargate argues these agreements, together with other measures such as password protection on its computer network, were reasonable efforts to protect confidentiality.

Even with such agreements, the efforts were not reasonable.

---

took in his role as Orion's President.

Requiring employees to sign confidentiality agreements may, in some circumstances, be "sufficient to constitute a reasonable step to maintain the secrecy of information alleged to have been misappropriated," *Equifax Svcs. v. Examination Mgmt. Svcs.*, 216 Ga. App. 35, 40 (2) (453 SE2d 488) (1994), but that does not obtain here. Stargate did not simply suggest its employees work for Orion and see them go to a competitor, it told them to work for Orion *on the continuing Rayonier projects*. Transferring the employees with such a charge necessarily gave Orion access to trade secrets. When telling its former employees to work for Orion, Stargate gave no instructions as to confidentiality of documentation on the projects. As a matter of law, given the circumstances, Stargate's efforts were not reasonable to maintain secrecy of any trade secrets concerning the Rayonier projects.

Stargate argues that even if Orion and Rumph properly acquired trade secrets from Stargate's employees, they still misappropriated secrets by disclosing computer source code to Rayonier and IBM, another Rayonier vendor. Stargate contends that this was done without its permission and with knowledge Stargate considered source code a trade secret, and that Orion and Rumph acquired the source code in circumstances giving rise to a duty to maintain secrecy. See OCGA § 10-1-761 (2) (B) (ii) (II). There is evidence Orion and Rumph knew that Stargate's intention was to deliver only object code to Rayonier, not source code, but Stargate points to no evidence that Orion or Rumph actually provided source code to Rayonier or any other person. There is evidence that portions of the source code were provided to IBM, but that occurred in the fall of 1994, before Orion's involvement. This argument fails.

3. Stargate contends its RICO claim should have survived summary judgment because there was evidence Orion and Rumph committed two or more predicate acts of conversion, computer theft, or computer trespass. It argues these were committed by taking computers, data, and records, and then, at a separate time, using and altering them to Stargate's injury.

The fact that elements of two crimes may have been present at two separate points in time does not create two predicate acts out of what is in reality a single transaction. *Brown v. Freedman*, 222 Ga. App. 213, 217-218 (3) (474 SE2d 73) (1996), does not aid Stargate. In that case there were two separate and distinct acts: improper accounting on a note and then, after a foreclosure, conversion of personal property unrelated to the note. They were not one transaction but rather joined by the common link of a single foreclosure. Stargate's allegations of taking and wrongful use of computer equipment and records is similar to the single transaction of *Raines v. State*, 219 Ga. App. 893, 894 (1) (467 SE2d 217) (1996) (sale of timber land based on false cruising reports and filing a false deed on the same

transaction), and to the extended real estate scheme of *Cobb v. Kennon Realty Svcs.*, 191 Ga. App. 740 (382 SE2d 697) (1989). There being only one transaction, the court did not err in granting summary judgment on the RICO claim.

4. Stargate enumerates as error the grant of summary judgment on Stargate's claim for attorney fees under OCGA § 13-6-11. The court stated there was a bona fide controversy and an award was therefore not justified. Stargate contends an award can nonetheless be made.

" ' "A plaintiff may recover for bad faith concerning the transactions and dealings out of which the cause of action arose. OCGA § 13-6-11; (cits.). A bona fide controversy within the contemplation of the code section pertains solely to the issue of stubborn litigiousness or causing the plaintiff unnecessary trouble and expense. Despite the existence of a bona fide controversy as to liability, a jury may find that defendant 'acted in the most atrocious bad faith in his dealing with the plaintiff.' (Cits.)" [Cit.]' [Cit.]" *Southern Co. v. Hamburg,* 220 Ga. App. 834, 841 (4) (470 SE2d 467) (1996). The question is whether there was "bad faith concerning the transactions and dealings out of which the cause of action arose." Id.

A jury could decide that Orion and Rumph acted with bad faith. " 'It is well established as the law of this state that every intentional tort invokes a species of bad faith and entitles a person so wronged to recover the expenses of litigation including attorney fees.' [Cit.] Moreover, bad faith is a question for the jury to be determined from consideration of the facts and circumstances in the case. [Cit.]" *Hayden v. Sigari,* 220 Ga. App. 6, 12 (10) (467 SE2d 590) (1996). The court denied summary judgment as to Stargate's claims of conversion, computer theft, and computer trespass. As these intentional torts remained for the jury's consideration, the claim for attorney fees rooted in bad faith concerning those actions should have also been left for the jury. It was premature, and thus error, to grant summary judgment on this issue altogether.

### Case No. A96A2391

5. Orion and Rumph enumerate as error the denial of summary judgment on Stargate's claim of tortious interference with its contract with Rayonier. As noted in Division 1, two elements of a claim of tortious interference with contractual relations are that the defendant " '(1) acted improperly and without privilege, [and] (2) purposely and with malice with the intent to injure. . . . The term malicious or maliciously means any unauthorized interference or any interference without justification or excuse.' " (Citation omitted.) *Green,* supra at 659-660 (4). Orion and Rumph argue the evidence does not show any

such malicious or improper action, only the natural course of events once Stargate began cooperating with Orion on the future course of the Rayonier project, at Rayonier's insistence.

Although Orion became involved in Stargate's business relationship with Rayonier at Rayonier's insistence, there is no evidence that any privilege granted thereby included a right to supplant Stargate as sole provider of the programming services. The only evidence is that any privilege Orion was given to participate in the contract between Stargate and Rayonier was to do so as a joint venturer.[3] We cannot say as a matter of law that the privilege extended to a complete supplanting of Stargate's role in the projects. Nor did the specific privilege Stargate gave to "interfere" in the employment contracts, see Division 1, extend to supplanting Stargate. As there was no total privilege, a jury could find Orion, and its president Rumph, acted "without justification or excuse," id., and therefore with malice, in arranging to step in for Stargate as the sole vendor on the Rayonier project while still engaged in negotiations with Stargate on the formation of a joint venture.

6. Next is whether the court erred in denying summary judgment on Stargate's computer theft and trespass claims. Stargate alleged that Orion and Rumph committed computer theft by taking and using Stargate's computers with the intention of taking, appropriating, obtaining, and converting Stargate property. OCGA § 16-9-93 (a), (g). It also alleged they committed computer trespass by using Stargate computers with the intention of interrupting, damaging, or destroying Stargate's computer programs or data. OCGA § 16-9-93 (b), (g). Both claims relate to computers not sold to Orion but nonetheless taken from the Stargate offices after January 5. There was evidence that those computers returned no longer had retrievable data and that at least one computer was not returned.

Orion and Rumph contend summary judgment was appropriate because for each tort to lie, the computer use must be done "with knowledge that such use is without authority." OCGA § 16-9-93 (a), (b). While there is evidence that Stargate authorized its employees to work for Orion, there is also evidence Stargate did not authorize Orion to access computers it did not purchase. Orion and Rumph argue that under the circumstances of Orion's hiring Stargate's employees it was reasonable to believe it had authority to use any necessary computers. But Orion had negotiated a separate agreement for the purchase of specific computers and then used and removed several other computers not covered by the sale agreement.

---

[3] Orion and Rumph do not argue that Rayonier had a right under its contract with Stargate to terminate Stargate as the vendor. None of the parties has arranged for any contract between Rayonier and Stargate to be made part of the record on appeal.

We cannot conclude as a matter of law that Orion and Rumph's use of the nonpurchased computers was reasonable. A jury must decide whether Orion and Rumph had knowledge that such use was without authority.

7. The penultimate question is whether the court erred in denying summary judgment to Orion and Rumph on the claim for conversion of personalty. There is evidence that not all personal property taken from Stargate offices has been returned. Appellants urge Stargate must make a demand for the return of such personal property before a conversion action can lie because it allowed use of its computers wherever Orion might choose, making the resulting use "authorized," and that no demand has been made. See *Kornegay v. Thompson*, 157 Ga. App. 558, 559 (1) (278 SE2d 140) (1981). As held in Division 6, it cannot be said as a matter of law that Orion and Rumph were authorized to use, or remove, Stargate computers.

8. Finally, Orion and Rumph enumerate as error the court's denial of summary judgment on Stargate's claim for fraud. Stargate contends that Orion and Rumph's failure to disclose facts concerning communications with Rayonier and McDougall during the negotiations between Stargate and Orion was fraudulent. "An obligation to disclose must exist before a party may be held liable for fraud based upon the concealment of material facts. [Cit.]" *William Goldberg & Co. v. Cohen*, 219 Ga. App. 628, 631 (1) (a) (466 SE2d 872) (1995). Stargate contends that an obligation to reveal these material facts arose from a requirement that Orion negotiate in good faith with Stargate.

There is an implied duty of good faith and fair dealing which accompanies every contract and "requires both parties to a contract to perform their promises and provide such cooperation as is required for the other party's performance. [Cit.]" *Ihesiaba v. Pelletier*, 214 Ga. App. 721, 724 (2) (448 SE2d 920) (1994). That obligation does not apply where, as here, there is no contract and therefore no implied agreement that the parties will cooperate with one another. Stargate does not cite any authority for the proposition that there is an obligation to reveal matters material to a negotiation that never results in a contract, and we find none.

Further, any positive representation Orion or Rumph made concerning an expectation of Orion entering a joint venture agreement cannot serve as the basis for a fraud claim. " ' " 'Misrepresentations are not actionable unless the complaining party was justified in relying thereon in the exercise of common prudence and diligence. And where the representation consists of general commendations or mere expressions of opinion, hope, expectation and the like . . . the party to whom it is made is not justified in relying upon it and assuming it to be true; he is bound to make inquiry and examination for himself

so as to ascertain the truth.' (Cit.)" (Cits.)' [Cit.]" (Emphasis omitted.) *Condon v. Kunse*, 208 Ga. App. 856, 857-858 (1) (432 SE2d 266) (1993). Stargate was not justified in relying upon any representation of Orion or Rumph's hope and expectation to reach an agreement in the future. Orion and Rumph should have been granted summary judgment on this claim.

*Judgments affirmed in part and reversed in part. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED FEBRUARY 26, 1997.

*Gerry, Friend & Sapronov, William D. Friend, Mari Myer*, for Stargate Software International, Inc.

*Knapp & Street, Halsey G. Knapp, Jr., Lisa E. Chang*, for Rumph and Orion Cem, Inc.