A98A1871. WRIGHT et al. v. POWER INDUSTRY CONSULTANTS, INC.
(508 SE2d 191)

JOHNSON, Presiding Judge.

Mark A. Wright, Jason A. Dunham, Gregg R. Anderson and Sonic Systems, Inc. appeal an interlocutory injunction issued against them after the trial court determined that four restrictive covenants contained in employment contracts signed by Wright and Dunham were enforceable. For reasons which follow, we affirm in part and reverse in part.

Wright and Dunham are former employees of Power Industry Consultants, Inc. (hereinafter "PIC"), a corporation which supplies personnel to industries on a temporary basis. Both men signed employment agreements with PIC containing the four restrictive covenants disputed in this case. Wright and Dunham left PIC in August 1997 and began employment at Sonic Systems, Inc. (hereinafter "SSI"), a Texas corporation which also supplies personnel to indus-

tries on a temporary basis. Anderson is also an employee of SSI.

The trial court issued an order enforcing the restrictive covenants contained in the employment contracts and barring Wright and Dunham from "further violating" them. The order also enjoined Anderson and SSI from "interfering with PIC's contracts with Wright and Dunham and with Wright and Dunham's fiduciary obligations owed to [PIC]."

1. "Whether the restraint[s] imposed by the employment contract [are] reasonable is a question of law for determination by the court." *W. R. Grace & Co. v. Mouyal*, 262 Ga. 464, 465 (1) (422 SE2d 529) (1992). The granting of injunctive relief lies "in the sound discretion of the [trial] judge." OCGA § 9-5-8. Consequently, the exercise of discretion by a lower court will not be interfered with absent a manifest abuse of that discretion. *Slautterback v. Intech Mgmt. Svcs.*, 247 Ga. 762, 766 (279 SE2d 701) (1981). Accord *West 80 Investors v. Chequers Investment Assoc.*, 214 Ga. App. 673, 675 (448 SE2d 735) (1994).

Wright, Dunham, Anderson, and SSI enumerate as error the trial court's determination that each of the four covenants is enforceable. The covenants are not dependent upon one another, and one may stand even though the others fall. See *Lane Co. v. Taylor*, 174 Ga. App. 356, 358-359 (2) (330 SE2d 112) (1985). We therefore analyze each covenant in turn.

2. The first of the four covenants is a covenant not to compete. "Covenants not to compete in employment contracts are enforceable if they are reasonable in terms of duration, territorial coverage, and the scope of activity precluded, considering the legitimate business interests the employer seeks to protect and the effect on the employee." *Chaichimansour v. Pets Are People Too &c.*, 226 Ga. App. 69, 70 (1) (485 SE2d 248) (1997). The covenant at issue provides that for one year after employment terminates Wright and Dunham will not act for any business other than PIC as a "shareholder, partner, director, officer, principal, employee, independent contractor, consultant or advisor, or as a sales representative in the business of (1) soliciting customers and potential customers for the placement of personnel at power generation projects, (2) soliciting personnel for the placement of same at power generation projects, (3) such other duties as may be necessary to perform to the power generation industry (. . . hereinafter referred to as 'Consulting Services')" within fifty miles of PIC's offices.

Although the specific scope of Wright's and Dunham's duties for PIC is in dispute, PIC does not allege that Wright and Dunham acted as shareholders, partners, or principals. Because the covenant contains a prohibition on activities beyond those Wright and Dunham performed for PIC, the covenant is overbroad and unenforceable.

*Harville v. Gunter*, 230 Ga. App. 198, 200 (2) (495 SE2d 862) (1998). In *Harville*, we held a covenant not to compete prohibiting a speech pathologist from acting as an "officer, director, [or] shareholder" for a future employer invalid because it imposed a broader restriction than necessary on the employee and was, therefore, overbroad in scope. We make no findings about the reasonableness of the duration or territorial limitation contained in this covenant.

The covenant not to compete at issue here is distinguishable from other covenants not to compete which we have previously held enforceable because they are narrowly tailored in the scope of activities prohibited. For example, in *Sysco Food Svcs. &c. v. Chupp*, 225 Ga. App. 584 (484 SE2d 323) (1997), we held a covenant not to compete was proper in its scope when the employee was prohibited from providing services which are the same or substantially similar to the employee's duties for the employer. Under that restriction, the employee is prohibited only from acting in a capacity that is the same as the one he held for the employer. Narrow tailorings such as the one in *Chupp*, unlike the one in the present case, protect the employer to a sufficient degree while not imposing unreasonable restrictions on the employee.

3. The second covenant is a covenant not to solicit customers. It provides that for one year Wright and Dunham cannot "for the purpose of attempting to provide Consulting Services . . . call upon, contact or solicit . . . any person or entity (Restricted Customers), which during the twelve (12) month period immediately prior to the Termination Date, was both (i) a customer of [PIC], and (ii) was a person or an entity to which [Wright or Dunham] marketed, promoted, distributed or sold Consulting Services on [PIC's] behalf." The territory for the covenant is defined as "any place of business of a Restricted Customer at which or to which place of business [Wright or Dunham] marketed, promoted, distributed or sold Consulting Services on [PIC's] behalf during the year prior to the Termination Date."

The covenant not to solicit customers is written in the conjunctive. Its scope is narrowly tailored to reach only a person or entity who was both a customer of PIC and a person or entity to which Wright or Dunham marketed, promoted, distributed or sold consulting services on PIC's behalf during the year prior to the termination date. Our Supreme Court upheld the enforceability of an even broader non-solicitation clause in *W. R. Grace & Co. v. Mouyal*, supra at 468 (2). In *Mouyal*, the restrictive covenant deemed enforceable by the Supreme Court provided: the "former employee is prohibited from post-employment solicitation of employer customers which the employee contacted during his tenure with the employer."

It is true that " 'a prohibition against doing business with *any* of

an employer's customers, whether or not a relationship existed between the customer and the former employee, is overbroad.' [Cit.]" (Emphasis in original.) *American Software USA v. Moore*, 264 Ga. 480, 483 (1) (448 SE2d 206) (1994). However, notwithstanding the claim to the contrary, this is not an "any customer" case because this covenant applied only to those customers to which Wright and Dunham actually marketed, promoted, distributed or sold the company's consulting services. See *Chaichimansour*, supra. Compare *Moore*, supra at 483 (1).

In seeking injunctive relief, PIC offered evidence that Wright had solicited three PIC customers: Bremco, Inc., Brown & Root, Inc., and John Brown Engineering Company. The record shows that PIC operated a specialized business which provided skilled craftsmen to certain industrial customers which have boilers, turbines, heat exchangers and other heavy machinery and equipment. PIC places these skilled craftsmen on a temporary contract basis with its customers. Less than a week after Wright resigned, he became president of SSI Technical Services, Inc., a subsidiary of Sonic Systems, Inc. Sonic Systems, Inc. owns both SSI Technical Services, Inc. and Craft Support Services, Inc. According to Wright, SSI Technical Services specializes in providing professional technical contract personnel to industries, a business not unlike the one he quit. Dunham also became employed with SSI Technical Services after he left PIC.

Wright and Dunham contend the non-solicitation covenant is overbroad and unenforceable because they were mere "telemarketers" who contacted all of PIC's customers, but lacked any substantive contact with these customers. Notwithstanding Wright's testimony to the contrary, the record shows that when he resigned from PIC in August 1997, his duties included more than mere telemarketing. By Wright's own admission, while still employed by PIC Crafts, Inc., he marketed PIC's services to Bremco and also "sold" (placed) craft personnel with Bremco. It is undisputed that after Wright left PIC, he had direct contact with Bremco and according to his affidavit, he "facilitated Bremco's conduct of business with Craft Support Services, Inc., a separate corporation by which I am not employed." But as noted above, although Wright is not an employee of Craft Support Services, he is the president of another entity owned by the same parent corporation.[1]

The vice president of PIC Process Services Corporation, Jerry Jennings, testified that in July 1997, Wright and he visited Brown &

---

[1] On cross-examination, Wright admitted that he used the services of Rick Walton, a former client of PIC, to obtain all the craftsmen for his present company. Walton, a skilled craftsman who formerly was assigned by PIC Crafts, Inc. to various customers of PIC, confirmed that he was employed by Craft Support Services.

Root, a customer of PIC in Houston. Again, this contact refutes Wright's assertion that he was merely a telemarketer. Jennings testified that after Wright left PIC the next month, the Brown & Root file was missing. Jennings testified that he had personal knowledge that Wright had solicited business from Brown & Root within two weeks of his resignation. According to Jennings, Wright also contacted John Brown Engineering Company, another customer that Wright had not only solicited but also managed programs for while he was the Director of PIC Crafts, Inc.

The record also shows that Dunham, who resigned from PIC on the same day as Wright, was also more than a mere telemarketer. While employed with PIC, Dunham was manager for client services for PIC Crafts, Inc.

Given the complexity of the respective corporate structures and the disputed evidence as to Wright's and Dunham's job responsibilities, both before and after they left PIC, the facts are confusing at best and conflicting at worst. "Where, as here, there exist conflicts regarding material issues of fact, [the Supreme Court] will not interfere to control the discretion vested in the trial court in granting an interlocutory injunction. [Cits.]" *Norfolk Southern R. Co. v. Dempsey*, 267 Ga. 241, 242-243 (1) (476 SE2d 577) (1996). This Court may not substitute itself for the trial court as factfinder by reweighing the substantiality of Wright's and Durham's contacts with customers. Id. The trial court did not abuse its discretion in granting temporary injunctive relief to PIC based on the non-solicitation covenant.

4. The third covenant is a nondisclosure provision which requires Wright and Dunham to keep confidential "[a]ll documents, building plans and blueprints, records, techniques, business secrets and other information . . . which have or will come into [the employee's] possession during [employment with PIC which] shall be deemed to be confidential and proprietary to [PIC]." Business secrets are defined as "including, but not limited to, such matters as costs, profits, blueprints, markets, sales, products, product lines, key personnel, pricing policies, operational methods, procedures, customers, customer lists, customer needs, suppliers, plans for future developments, and other business affairs and methods and other information not readily available to the public." It is undisputed that this nondisclosure covenant does not include a time limitation.

A nondisclosure clause with no time limit is unenforceable as to information that is not a trade secret. See *U3S Corp. of America v. Parker*, 202 Ga. App. 374, 378 (2) (b) (414 SE2d 513) (1991); *Allen v. Hub Cap Heaven*, 225 Ga. App. 533, 539 (6) (484 SE2d 259) (1997). However, in the Georgia Trade Secrets Act of 1990 (OCGA § 10-1-760 et seq.), the legislature carved out protection for written agreements which failed to set a time limit for maintaining the trade secret.

OCGA § 10-1-767 (b) expressly provides "[t]his article shall not affect: (1) Contractual duties or remedies . . . ; provided, however, that a contractual duty to maintain a trade secret or limit use of a trade secret shall not be deemed void or unenforceable solely for lack of a durational or geographical limitation on the duty." Thus, the statute protects contracts, like the one here, which lack an express time limit.

In defining trade secrets, the legislature included "information, without regard to form, including, but not limited to, technical or nontechnical data, a formula, a pattern, a compilation, a program, a device, a method, a technique, a drawing, a process, financial data, financial plans, product plans, or a list of actual or potential customers or suppliers which is not commonly known by or available to the public." OCGA § 10-1-761 (4). This information must (1) derive economic value, either actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use and (2) be the subject of efforts that are reasonable under the circumstances to maintain its secrecy. OCGA § 10-1-761 (4) (A), (B).

Where a business makes a reasonable effort to maintain the secrecy of its customer lists and other trade secrets, then a trial court does not abuse its discretion in granting an interlocutory injunction under the Trade Secrets Act. *DeGiorgio v. Megabyte Intl.*, 266 Ga. 539, 540 (2) (468 SE2d 367) (1996). Thus, if PIC's customer list, its list of craftsmen, and its internal company files are not generally known and PIC reasonably attempted to maintain their confidentiality, then they are protected as trade secrets, and the restrictive covenant is enforceable despite its failure to specify a time limit. OCGA § 10-1-767 (b) (1).

Here, PIC's verified complaint asserted, "Defendants have taken lists and other confidential information from the office of PIC." This allegation is supported by testimony from two officials. PIC's vice president testified that "[a]fter Wright resigned from PIC, I searched for a Brown & Root, Inc. file that Wright and I created. . . . The Brown & Root file contained sensitive and confidential information regarding PIC, including its price structure. That file always was kept in Wright's office. That file is now missing."

PIC's director of staffing testified that he kept the sole original list of PIC's craftsmen. To perform his job duties, Wright was provided a copy of that list. The director testified, without contradiction, that when PIC searched for the list after Wright's departure, this search for Wright's copy of the list proved unsuccessful.

In light of the evidence that PIC attempted to maintain the confidentiality of this information, the trial court did not abuse its discretion in protecting PIC by issuing a temporary restraining order as

to the confidentiality of this information. *Avnet, Inc. v. Wyle Laboratories*, 263 Ga. 615, 616 (1) (437 SE2d 302) (1993) (Georgia Trade Secrets Act authorizes injunctive relief to protect trade secrets, including actual customer lists).

5. The fourth covenant prohibits Wright and Dunham from "contact[ing] or encourag[ing] another to contact any person who is, at that time, and was, during the term of this Agreement, an employee, agent or contractor of [PIC] in a managerial, sales, representative or skilled capacity for the purpose or with the intent of enticing him or her away from the employ of [PIC] for any reason" for a period of one year. Because we find this covenant reasonable in scope and duration, we uphold the trial court's finding that it is enforceable.

The covenant PIC seeks to enforce is of a duration allowed by Georgia law. In *Lane Co.*, supra, this Court enforced a covenant prohibiting employees from hiring or attempting to hire for another employer any employee of their former employer or directly or indirectly causing any such employee to leave his employment in order to work for another for a period of one year. See id. at 360. More recently, we upheld a similar covenant restricting employee solicitation for two years after termination. *Sunstates Refrigerated Svcs. v. Griffin*, 215 Ga. App. 61, 64 (2) (449 SE2d 858) (1994). The covenant at issue also resembles those in *Sunstates*, supra, and *Lane Co.*, supra, in the scope of restricted activity. We agree with the trial court that this covenant can be enforced against Wright and Dunham.

6. Wright, Dunham, Anderson, and SSI also enumerate as error the trial court's injunction of SSI and Anderson. Even though PIC never argued that Wright and Dunham owed it a fiduciary duty, and the trial court never asked the parties to brief the issue, the trial court ruled sua sponte in its one-page order that SSI and Anderson were enjoined from "interfering with PIC's contracts with Wright and Dunham and with Wright and Dunham's fiduciary obligations" owed to PIC.

The burden of proving a fiduciary relationship is on the party seeking to establish the existence of the relationship. *Allen*, supra at 537. Here PIC has made no effort to establish the existence of a fiduciary relationship other than by allegations contained in the complaint, which were denied by all other parties in their answers and affidavits. Additionally harmful to any assertion by PIC of breach of fiduciary duty is the established rule that making plans to enter a competing business while still in the employ of another business does not constitute a breach of fiduciary duty. *Nilan's Alley v. Ginsburg*, 208 Ga. App. 145 (1) (430 SE2d 368) (1993). In the absence of affirmative proof of a fiduciary relationship by PIC, it was error for the trial court to rule that Wright and Dunham owed a fiduciary obligation to PIC.

*Judgment affirmed in part and reversed in part. Smith, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED OCTOBER 22, 1998.

*Gerry, Friend & Sapronov, William D. Friend, Mari Myer,* for appellants.
*Ford & Harrison, F. Carter Tate, David C. Hagaman,* for appellee.