## A99A0394. REARDIGAN v. SHAW INDUSTRIES, INC.
(518 SE2d 144)

SMITH, Judge.

This appeal involves the construction of a non-competition and non-solicitation agreement executed by appellant Pat Reardigan, a former employee of appellee Shaw Industries. Because the agreement was sufficiently limited in duration, territorial coverage, and scope of activity, the trial court correctly granted injunctive relief, and we affirm.[1]

In 1990, Reardigan was hired by Bell-Mann, Inc., now merged with Shaw. Bell-Mann and Shaw sell carpet and other floor coverings in the Atlanta area. Reardigan dealt primarily with developers and contractors on construction projects in the Atlanta metropolitan area and the Southeast, submitting bids for supplying carpet and floor covering to the projects. In 1992, Reardigan executed an employment contract with Bell-Mann containing two agreements relevant here. The clause headed "Noncompetition" provides in relevant part:

> You covenant and agree that during your employment with Bell-Mann and for a period ending on December 31st of the calendar year following the calendar year in which your employment terminates, you will not, on your own behalf or in the service or on behalf of others, compete with Bell-Mann anywhere within the Atlanta Metropolitan Statistical Area, as said term is defined by the United States Office of Management and Budget (the "Territory"), by engaging or attempting to engage in the business of buying, selling and installing carpet and other floor coverings for residential or commercial uses, in circumstances where your responsibilities and duties are substantially similar to those performed by you for Bell-Mann.

At the time of execution of the contract, the Atlanta Metropolitan

---

[1] The Supreme Court has jurisdiction of equity cases, but when injunctive relief is granted or denied based upon the construction of a non-competition agreement, the Supreme Court has held that the case is not an equity case and is within this court's appellate jurisdiction. *Pittman v. Harbin Clinic Professional Assn.*, 263 Ga. 66 (428 SE2d 328) (1993).

Statistical Area ("MSA") contained eighteen counties; it has since been revised to include two more.

The contract also contains a clause headed, "Non-solicitation of Customers," providing:

> You covenant and agree that during your employment with Bell-Mann and for a period ending on December 31st of the calendar year following the calendar year in which your employment terminates, you will not, anywhere within the Territory, on your own behalf or in the service or on behalf of others, call on, solicit or take away as a client or customer or attempt to call on, solicit or take away as a client or customer any individual, partnership, corporation or association that was a client or customer of Bell-Mann and was serviced by you or under your supervision during your employment with Bell-Mann.

On June 26, 1998, Reardigan resigned from Shaw. He later took a position with Floors With Dimensions, Inc., a direct competitor of Shaw. This litigation followed.

1. In determining the legality of a restrictive covenant, a court may consider the nature and extent of the business, the situation of the parties, and all other relevant circumstances. *W. R. Grace & Co. v. Mouyal*, 262 Ga. 464, 465 (1) (422 SE2d 529) (1992). "Whether the restraints imposed by an employment contract are reasonable is a question of law for determination by the court. However, facts are sometimes necessary to determine whether a questionable restriction, though not void on its face is, in fact, reasonable." (Citations and punctuation omitted.) *Rollins Protective Svcs. Co. v. Palermo*, 249 Ga. 138, 139 (1) (287 SE2d 546) (1982). To determine the reasonableness of the restrictions as applied to the facts presented, the courts have established a three-element test of duration, territorial coverage, and scope of prohibited activity. *Sysco Food Svcs. &c. v. Chupp*, 225 Ga. App. 584, 585 (1) (484 SE2d 323) (1997).

(a) In a footnote and citing no authority, Reardigan claims that the restriction is unreasonable with respect to duration because its length varies depending on the date of termination of employment. But the restriction ends at a date certain: December 31 of the calendar year after the calendar year when the employment terminates, and it "is definite and not limitless. [Cit.]" *Smith v. HBT, Inc.*, 213 Ga. App. 560, 563 (4) (445 SE2d 315) (1994). While the actual length of the restriction imposed by this contract is somewhat variable depending upon the date of termination or resignation, the maximum possible length, two years, is within that held permissible under Georgia law. *U3S Corp. &c. v. Parker*, 202 Ga. App. 374, 378 (2)

(b) (414 SE2d 513) (1991) (two years); see also *Smith,* supra (five years). The ending date of the restriction is ascertainable with certainty immediately upon the employee's termination or resignation, and it is therefore no more indeterminate than a restriction of a certain number of months or years. The end of such a restriction also becomes ascertainable only when the date of termination is established. The contract is not unreasonable with respect to duration.

(b) Reardigan also asserts that the territorial coverage in the contract is overbroad. We disagree. The 18 counties enumerated in the Atlanta MSA, with the exception of a small portion of Coweta County, lie well within a 50-mile radius of Shaw's business. This court has considered the radius within which certain enumerated counties lie as relevant to the reasonableness of a territorial limitation. *Pittman v. Harbin Clinic Professional Assn.,* 210 Ga. App. 767, 769 (1) (437 SE2d 619) (1993). And territorial limits of a 50-mile radius of the employer's business have been held to be reasonable in Georgia. See, e.g., *Smith,* supra at 563 (3); *Annis v. Tomberlin & Shelnutt Assocs.,* 195 Ga. App. 27, 31 (2) (392 SE2d 717) (1990); *McMurray v. Bateman,* 221 Ga. 240, 255 (4) (144 SE2d 345) (1965).

Shaw's computer records showed successful bids by Reardigan in eight of the eighteen counties in the Atlanta MSA as it existed at the time of the contract, as well as in Alabama, Tennessee, and Florida. Evidence also was presented that Reardigan solicited business on projects in most or all of the Atlanta metropolitan area. In contrast to the regional salesperson assigned to call on customers in a particular territory, Reardigan relied upon his relationships with contractors and developers to obtain subcontracts for the installation of carpet. Reardigan acknowledged that he often did not know the counties in which these contractors' work was performed and that he bid as many as 30 jobs in a week. Uncontradicted evidence was presented that these contractors and developers performed work throughout the Atlanta metropolitan area and the Southeast.

In construing territorial restrictions in an employment contract, the trial court must examine the reasonableness of the restriction in view of all the facts and circumstances surrounding the case. Restrictions related to the territory in which the employee was employed, as opposed to the territory in which the employer does business, generally will be enforced, because "a court will accept as prima facie valid a covenant related to the territory where the employee was employed as a legitimate protection of the employer's investment in customer relations and good will." (Punctuation omitted.) *Rollins Protective,* supra at 139-140.

Because of the nature of Reardigan's work, the trial court could reasonably conclude that his employment territory included not only the corporate offices of the general contractors through which he

solicited business, but also the location of the actual projects on which he submitted bids. The evidence also showed that the described territory was considerably smaller than the four-state area in which Reardigan actually solicited and won bids. We cannot say that, under the facts presented, the trial court erred in concluding that Reardigan was employed in most or all of the 18-county area described in the contract.

(c) Reardigan also contends that the territorial restriction is impermissibly vague because the definition of the Atlanta MSA has changed since his contract was executed. But the definiteness of a territorial restriction is evaluated as of the time of execution of the contract. "[A] territorial restriction which cannot be determined until the date of the employee's termination is too indefinite to be enforced." *Koger Properties v. Adams-Cates Co.*, 247 Ga. 68 (274 SE2d 329) (1981). While Reardigan relies on *Koger,* it is factually inapposite here because the restrictive covenant in *Koger* defined the territory only as " 'various metropolitan areas in the United States where the employer is engaged as herein described in the conduct of said employer's business at the time of such termination.' " (Emphasis omitted.) Id. It defined neither the particular metropolitan area nor those places in which the employer might be doing business at the future and indeterminate time of the employee's termination. Here, in contrast, the extent of "the Atlanta Metropolitan Statistical Area, as said term *is* defined by the United States Office of Management and Budget" was easily ascertainable at the time the contract was executed.[2] (Emphasis supplied.)

"The law does not require exact precision; it forbids unreasonably broad territorial coverage." *Sysco,* supra at 586.

> Adopting the principle urged . . . would create the inconsistent result of voiding a non-competition covenant for overbreadth if it does not include a territorial limitation, but also voiding it for overbreadth if it does include a limitation that is not correct to the letter.

(Emphasis omitted.) Id. at 587 (1). The definition of the relevant territory contained in the contract was reasonable and easily ascertainable at the time Reardigan executed the contract, even though the Office of Management & Budget later redefined the Atlanta MSA.

(d) Reardigan also asserts that the contract is more restrictive than necessary to protect Shaw. He contends that it forbids him to sell carpet for residential uses although his "main focus was commer-

---

[2] Reardigan acknowledged that he was not prevented from ascertaining the extent of the Atlanta MSA before or after he signed the contract.

cial,"[3] that it unduly restricts the products he is permitted to sell, and that it prohibits him from "installing" carpet, which he contends he never undertook for Shaw. But the contract adds that Reardigan is forbidden to compete with Shaw only "in circumstances where [his] responsibilities and duties are substantially similar to those performed by [him]" for Shaw. Such a provision is "narrowly tailored in the scope of activities prohibited" and is permissible. *Wright v. Power Indus. Consultants*, 234 Ga. App. 833, 835 (2) (508 SE2d 191) (1998). Such narrow tailorings "protect the employer to a sufficient degree while not imposing unreasonable restrictions on the employee." Id.

It follows that the trial court also did not err in entering an order describing the scope of activities prohibited by the non-competition agreement. The order was simply a necessary determination of the "responsibilities and duties . . . substantially similar to those performed by" Reardigan for Shaw as required by the agreement. The trial court incorporated evidence and testimony adduced at the hearing with regard to the scope of Reardigan's duties at Shaw to make this factual determination, and we find no error.

2. Reardigan's sole contention with regard to the non-solicitation agreement is that it fails because the non-competition agreement is invalid. Since we have held that the trial court did not err in upholding the non-competition agreement, this argument is without merit.

*Judgment affirmed. Pope, P. J., and Eldridge, J., concur.*

DECIDED MAY 18, 1999.

*Ford & Harrison, John L. Monroe, Jr., Jeffrey D. Mokotoff*, for appellant.

*Perrie, Buker, Jones & Morton, J. William Haley, Drew, Eckl & Farnham, Gregory G. Schultz*, for appellee.

---

[3] But Shaw presented evidence, and Reardigan acknowledged, that he did make residential sales.