A00A1123. LIGHTING GALLERIES, INC. v. DRUMMOND et al.

(543 SE2d 419)

PHIPPS, Judge.

Lighting Galleries, Inc. (LGI) filed an action for injunctive relief and damages against two of its former employees, Amanda Berryman Drummond and Brian Carlisle, and their new employer, Southern Lighting Gallery, Inc. (SLG). LGI appeals an order of the trial court denying motions to temporarily restrain Drummond, Carlisle, and SLG from violating noncompete and nondisclosure covenants in Drummond's and Carlisle's employment agreements with LGI.

With respect to the covenant not to compete, we affirm the denial of the injunction against Carlisle because the covenant was overbroad as it applied to him. We reverse the denial of the injunction to enforce the covenant against Drummond and SLG because the covenant was not overbroad as to Drummond and the record shows that she had engaged in activities at SLG which violated the covenant. We affirm the denial of the injunction to enforce the nondisclosure provision because the record does not establish that Drummond or Carlisle disclosed or was threatening disclosure of any confidential information to SLG.

LGI consists of four operating divisions: (1) Augusta Lighting, which maintains a showroom in Augusta, Georgia; (2) American Light Source, which consists solely of mail order and telephone sales; (3) Lights Plus, which maintains a showroom in Lexington, South Carolina; and (4) Putzel's Lighting, which maintains a showroom in Macon, Georgia.

Drummond worked as a salesperson for Augusta Lighting from September 17, 1996, to December 14, 1998, when she was terminated. Carlisle was hired by LGI to work in the Augusta Lighting warehouse on March 10, 1997. On September 4, 1997, he was transferred to American Light Source, where he worked as a mail order salesperson.

On November 29, 1997, Drummond and Carlisle were required to sign employment agreements which contained covenants against competition, disclosure of confidential information, and solicitation of customers. In early 1998, Carlisle was trained as a showroom sales consultant at Augusta Lighting and was transferred to the Lexington, South Carolina, showroom, where he worked as a salesman. On December 30, 1998, Carlisle resigned from employment with LGI and returned to Augusta.

SLG hired Drummond as a showroom manager on June 1, 1999. On June 18, it hired Carlisle in a sales capacity.

On September 16, LGI filed a complaint against Drummond, Carlisle, and SLG, seeking damages, expenses of litigation, and temporary and permanent injunctions against violation of the employment agreements. LGI also filed a motion for temporary injunction, asserting that Drummond and Carlisle had violated the noncompete, nondisclosure, and nonsolicitation clauses in the employment agreements.

The trial court granted the motion with respect to the nonsolicitation provision but denied it with respect to the noncompete and nondisclosure clauses. LGI appeals the denial of its motion to temporarily enjoin Drummond, Carlisle, and SLG from violating the noncompete and nondisclosure clauses.

> The granting and continuing of injunctions shall always rest in the sound discretion of the judge, according to the circumstances of each case. This power shall be prudently and cautiously exercised and, except in clear and urgent cases, should not be resorted to.[1]

> "Covenants against competition which are contained in employment contracts are considered to be in partial restraint of trade and will be upheld only if they are strictly limited in time and territorial effect, and are otherwise reasonable considering the business interest of the employer sought to be protected and the effect on the employee." [Cit.][2]

---

[1] OCGA § 9-5-8.

[2] (Footnote omitted.) *Nat. Teen-ager Co. v. Scarborough*, 254 Ga. 467, 468-469 (330 SE2d 711) (1985).

The employer has interests in protecting its investment in the development of the employee's skills and craft and in preventing the employee from taking unfair advantage of customer relationships he developed while working for the employer.[3] The employee has a right to earn a living without unreasonable restrictions.[4]

Whether a restraint is reasonable is a question of law for determination by the court.[5] The trial court's findings of fact will not be set aside on appeal unless clearly erroneous.[6]

1. The noncompetition covenant comprises the following provisions:

> *Employee's Territory.* Employee acknowledges and agrees with Employer that Employee's activities in the execution of his/her duties will be conducted within the following counties in the State of Georgia: Columbia and Richmond, and Aiken county in the State of South Carolina.
>
> *Disqualified Employment in Employee's Territory.* During the time of Employee's employment by Employer, and for a period of two (2) years thereafter, the Employee will not engage in employment as a residential lighting sales consultant in Employee's designated territory on behalf of himself/herself or any competitor of Employer.

(a) As to Carlisle, there was evidence that the employment agreement may have been superseded by a subsequent agreement that he signed when he was transferred to the South Carolina showroom.[7] But even if we assume that the agreement was not rescinded by a subsequent agreement, the noncompetition covenant was unreasonable as it applied to Carlisle. The covenant flatly banned him from working as a residential lighting sales consultant in the Augusta area for two years after he ceased working for LGI. But, because LGI had transferred him to Lexington, South Carolina, he had not worked in the Augusta area for approximately one year before he left LGI. Given Carlisle's long absence from the area, it was unreasonable to impose the full two-year restriction upon his

---

[3] *Brunswick Floors v. Guest*, 234 Ga. App. 298, 299-300 (506 SE2d 670) (1998); *W. R. Grace & Co. v. Mouyal*, 262 Ga. 464, 465-466 (2) (422 SE2d 529) (1992).

[4] Id.

[5] *Wright v. Power Indus. Consultants*, 234 Ga. App. 833, 834 (1) (508 SE2d 191) (1998).

[6] OCGA § 9-11-52 (a); *Merchant v. Mitchell*, 241 Ga. App. 173, 174 (2) (525 SE2d 710) (1999).

[7] According to Carlisle and an administrative assistant for Robert Pentecost, the majority shareholder of LGI, Carlisle signed another employment agreement after he was transferred to South Carolina, and that agreement limited the restricted area to Richland and Lexington Counties in South Carolina. Pentecost denies this.

employment there.[8]

(b) However, as to Drummond and SLG, we find that the court abused its discretion in not granting an injunction to enforce the noncompete covenant. The court found that the covenant was overbroad and nonspecific and that there was no competent evidence that Drummond had worked elsewhere as a residential lighting sales consultant, as prohibited by the agreement.

In regard to its conclusion that the covenant was overbroad and nonspecific, the court determined that the prohibition against employment as a residential lighting sales consultant provided insufficient guidance as to what conduct was proscribed. It is true that

> [a] non-competition covenant which prohibits an employee from working for a competitor in any capacity, that is, a covenant which fails to specify with particularity the activities which the employee is prohibited from performing, is too broad and indefinite to be enforceable.[9]

However, the question is generally not determinable from merely looking at the face of the restrictive covenant.[10] We must consider the particular factual context.[11] We find that this covenant was not overbroad in the scope of activity prohibited because it was "tailored to the job [Drummond] performed for [LGI]."[12]

We find also that the record does not support the court's determination that Drummond did not engage in prohibited activities at SLG. Drummond testified in her deposition that while at LGI, her duties as a residential lighting sales consultant included selling products on the showroom floor. While the record indicates that Drummond held a nonsales position of showroom manager at SLG, there is evidence that on several occasions she engaged in sales-related activities.

Robert Pentecost, the President of LGI, sent four mystery shoppers to the SLG showroom, in part to ascertain what activities Drummond and Carlisle were engaging in. The trial court found that the deposition testimony of the mystery shoppers merely established that "Drummond became involved in answering highly technical product information type questions that [the mystery shoppers] used to stump the initial sales person . . . and that Drummond became

---

[8] See *Orkin Exterminating Co. v. Walker*, 251 Ga. 536, 538 (2) (a) (307 SE2d 914) (1983).

[9] *Nat. Teen-ager Co.*, supra, 254 Ga. at 469.

[10] Id.

[11] Id.

[12] *Ceramic & Metal Coatings Corp. v. Hizer*, 242 Ga. App. 391, 394 (529 SE2d 160) (2000); compare *Arnall Ins. Agency v. Arnall*, 196 Ga. App. 414, 416-418 (1) (396 SE2d 257) (1990); *Orkin*, supra, 251 Ga. at 539 (2) (c).

involved in entering information in the computer which was necessary to accomplish special orders."

Although the record supports a finding that Drummond's role sometimes was limited to providing insight on highly technical matters, it also shows that her aim was to assist in the making of sales. Moreover, according to the testimony of the mystery shoppers, she also engaged in activities such as helping them determine what products would best suit their needs, locating and procuring products from sources outside the store, and providing information regarding prices, discounts, and warranties. One shopper testified that Drummond offered her a ten percent discount if she would purchase items for her home remodeling project from SLG. Another testified that she was given the impression Drummond and another salesperson would "walk through" her home to help her determine what lighting fixture products were most suitable.

For these reasons, we find that as to Drummond and SLG the court incorrectly determined that an injunction to enforce the noncompete covenant was unwarranted.

2. The nondisclosure covenant comprises the following provisions:

> *Trade Secrets and Other Confidential Information.* Employee hereby acknowledges that Employer's business is the marketing and sale of residential lighting fixtures. Employee further acknowledges that Employer's customer lists and marketing methods, and financial statements and records constitute confidential, proprietary information and trade secrets of Employer, the disclosure of which would cause irreparable harm to Employer.
> *Nondisclosure Covenant.* During the time of Employee's employment, and for a period of two (2) years thereafter, Employee covenants and agrees that he/she will not disclose to any competitor of Employer the confidential information and trade secrets belonging to Employer described [above]. . . . Employee further agrees that upon the termination of his/her employment, all records[,] lists or reports pertaining to or referencing any customer names or addresses, samples, operations and price structures or lists, including all copies, abstracts or summaries thereof, and all other property belonging to Employer shall be immediately returned by Employee to Employer.

LGI contends that Drummond and Carlisle violated the nondisclosure covenant by contacting several of its customers and one of its suppliers and by disclosing its pricing information to SLG. We find

that the record fails to demonstrate that Drummond or Carlisle violated or was threatening violation of the nondisclosure covenant.[13]

LGI's claims that Drummond and Carlisle contacted customers and a supplier do not raise matters which would be covered by the nondisclosure provisions. LGI does not assert that these contacts were a result of Drummond or Carlisle disclosing confidential information to SLG.

Moreover, the record does not substantiate LGI's claim that Drummond or Carlisle disclosed confidential pricing information to SLG. LGI points to a correlation in price markups employed by LGI and SLG. But the President of LGI conceded in his deposition that he had no evidence that Drummond and Carlisle had shared any confidential pricing information with SLG.

We find no error in the trial court's denial of LGI's motion for a temporary injunction to enforce the nondisclosure covenant.

*Judgment affirmed in part and reversed in part. Johnson, C. J., and Smith, P. J., concur.*

DECIDED DECEMBER 1, 2000.

*Jay M. Sawilowsky*, for appellant.

*Nimmons & Malchow, Leland M. Malchow, Kilpatrick Stockton, Robert P. Sentell III, Johnson, Wilkin & Williams, William J. Williams, Wendell E. Johnston, Jr.*, for appellees.

---

[13] See *American Software USA v. Moore*, 264 Ga. 480, 484 (2) (448 SE2d 206) (1994); see also *Cathcart Van &c. Co. v. City of Atlanta*, 169 Ga. 791, 793 (151 SE 489) (1930) (court of equity should not exercise its extraordinary powers where there is no grave danger of impending injury).