546 S.E.2d 37 (2001)
248 Ga. App. 265
COVINGTON et al.
v.
D.L. PIMPER GROUP, INC.
No. A01A0398.
Court of Appeals of Georgia.
February 23, 2001.
*38 Hunton & Williams, Scott M. Ratchick, Amy K. Alcoke, Atlanta, for appellants.
Brinson, Askew, Berry, Seigler, Richardson & Davis, C. King Askew, Mark M.J. Webb, Rome, for appellee.
JOHNSON, Presiding Judge.
D.L. Pimper Group, Inc. sought to enforce a covenant not to compete, a nonsolicitation agreement and a provision regarding confidential information and trade secrets against Dean Covington, its former employee, and Interstate/Johnson Lane Wachovia (hereinafter "IJL Wachovia"), with whom Covington began work. Following written and oral arguments and an evidentiary hearing, the trial court granted an interlocutory injunction against Covington and IJL Wachovia. They appeal from that order.
The evidence shows that there are several types of stores selling stocks and securities. There are large national brokerage houses *39 (wire houses) which act as brokers and trade in their own names on the floor of the stock exchanges. There are regional brokers who can trade in their corporate names. And there are independent brokers who contract with licensed securities salesmen who are employees of local stock stores.
D.L. Pimper is a local stock store. Its employees buy and sell securities for clients through Royal Alliance Associates, Inc., an independent broker. IJL Wachovia is a regional broker that can trade in its own name. While Covington and IJL Wachovia list a number of differences between the two companies' organizations, these distinctions are not relevant to our determination of the present case. What is relevant is the fact that the two companies compete for the same business. Employees of both companies sell stock, bonds, mutual funds and other investments to their clients. D.L. Pimper and its employees compete directly with the local office of IJL Wachovia.
On April 16, 1996, D.L. Pimper and Covington entered into an employment agreement containing a covenant not to compete, a provision regarding confidential information and trade secrets and a nonsolicitation agreement. Covington worked for D.L. Pimper until August 10, 2000, when he tendered his resignation and began working for IJL Wachovia.
The record shows that in discussions with IJL Wachovia, Covington indicated that he could move roughly $20,000,000 worth of business from D.L. Pimper to IJL Wachovia. Between August 1 and August 8, 2000, Covington copied and removed information regarding accounts that he serviced as an employee of D.L. Pimper and gave them to representatives of IJL Wachovia. On August 8, 2000, two days before his resignation, administrators at IJL Wachovia used the information supplied by Covington to prepare packets soliciting the transfer of between 100 and 200 accounts of individuals serviced by Covington. These letters of solicitation were based on a sample letter selected by Covington.
Approximately one hour after resigning from D.L. Pimper, Covington signed a compensation agreement with IJL Wachovia and began signing the solicitation of business transfer letters prepared from his D.L. Pimper client list. The letters were then mailed to many of his former clients, along with transfer forms and IJL Wachovia return envelopes. A number of solicitation letters were mailed from the offices of IJL Wachovia on the same day Covington tendered his resignation at D.L. Pimper. Approximately 35 percent to 50 percent of those accounts had been assigned to Covington by D.L. Pimper when he became an employee.
The trial court granted an interlocutory injunction against Covington and IJL Wachovia, and they appeal from that order. The trial court's task on application for interlocutory injunction is "to balance the conveniences of the parties, to preserve the status quo, and to consider whether greater harm would result from granting or refusing the injunction."[1] Generally, the trial court has broad discretion to decide whether to grant or deny an interlocutory injunction.[2] We will not disturb the trial court's decision absent a manifest abuse of that discretion.[3]
Where the trial court, in ruling on an interlocutory injunction, makes findings of fact based upon conflicting evidence, this court will not disturb the ruling as an abuse of discretion unless the denial or granting of the injunction was based on an erroneous interpretation of the law.[4]
1. Covington and IJL Wachovia contend the trial court erred in enforcing the covenant not to compete in Covington's employment agreement with D.L. Pimper. The covenant not to compete states as follows:
Upon the termination of this Agreement, for any reason, Employee shall not, within *40 Floyd County, Georgia, for a period of one (1) year, directly or indirectly, solicit securities transactions or brokerage services, either as an individual on his own account, or as a partner or joint venturer, or as an employee, agent or salesperson for any person or business entity, or as an officer, director or stockholder of a corporation, or otherwise.
It is well established that the reasonableness of a noncompetition covenant is determined by applying a three-element test of duration, territorial coverage and scope of prohibited activity.[5] Covington and IJL Wachovia maintain that this covenant is overbroad because it contains a prohibition on activities beyond those that Covington performed for D.L. Pimper.[6] The trial court found that this covenant is properly limited in the scope of activities prohibited. We agree.
In the covenant at issue, Covington is precluded from soliciting securities transactions or brokerage services. Contrary to Covington and IJL Wachovia's contention, the trial court was authorized to find from the evidence that Covington solicited securities transactions or brokerage services as an employee of D.L. Pimper. Although Covington was technically a registered agent with Royal Alliance and could only sell the securities transactions or brokerage services through that company, it is undisputed that he solicited these sales as an employee of D.L. Pimper.
Wright v. Power Indus. Consultants, Inc.,[7] is inapposite. The covenant in Wright focused on restricting the employee based upon labels or titles of employment, not activities which the employee was prohibited from pursuing. The covenant at issue does not prohibit Covington from acting as a shareholder, partner, director, employee, et cetera, of any particular business. It merely prohibits him from soliciting securities transactions or brokerage servicesthe very act he conducted while an employee of D.L. Pimperwhile working in any of these capacities. Because we find no abuse of discretion in the trial court's entry of injunctive relief on this ground, we affirm.[8]
2. Covington and IJL Wachovia contend the trial court erred in enforcing the nonsolicitation agreement in Covington's employment agreement with D.L. Pimper. The nonsolicitation agreement states as follows:
Employee agrees that during the period of twelve (12) months immediately following termination of this Employment Agreement with Employer, which will cause the termination of Employee's access to Employer's Confidential Information and proprietary information, whether terminated by Employee or by Employer, and whether such termination is with or without cause, Employee shall not, on his own behalf, or on behalf of any person, firm, partnership, association, corporation or business or organization, entity or enterprise, solicit, contact, call upon, communicate with or attempt to communicate with any client or prospective client of Employer, or any representative of any client or prospective client of Employer, with a view to sell or provide securities or brokerage service competitive or potentially competitive with any securities or brokerage product or service sold or provided by Employer during the period of two (2) years immediately preceding termination of this Employment Agreement, provided that the restrictions set forth in this section shall apply only to clients or prospective clients of Employer, or representatives of clients or prospective clients of Employer with which Employee had contact during such two (2) year period. The actions prohibited in this section shall not be engaged by Employee directly or indirectly, whether as manager, salesman, *41 agent, sales or service representative or otherwise.
Covington and IJL Wachovia maintain that this covenant is unlawful for three reasons: (1) its prohibition against Covington "communicating with" clients of D.L. Pimper is overly broad; (2) its prohibition against Covington's solicitation of "prospective clients" of D.L. Pimper and against solicitation of services that are "potentially competitive" with D.L. Pimper is overly broad, and (3) its prohibition against solicitation of "any" of D.L. Pimper's clients "with the view to sell or provide securities or brokerage services" is overly broad. The trial court found that this covenant is reasonable in terms of territory, time and prohibited activity. We agree.
In W.R. Grace & Co. v. Mouyal,[9] the Supreme Court upheld an almost verbatim nonsolicitation covenant. The nonsolicitation covenant in W.R. Grace also used the term "communicate with" and also prohibited solicitation of any "prospect" of the employer and solicitation of "potentially competitive" equipment or services. The W.R. Grace covenant also prohibited the solicitation of "any" of the employer's customers "with a view to sale or providing" any product, equipment or service competitive or potentially competitive with any product, equipment or service sold or provided by the employer.[10]
As the Supreme Court found in W.R. Grace, we find the covenant at issue to be reasonable in terms of duration, territorial coverage and scope of activity sought to be precluded. Although Covington was technically a registered agent with Royal Alliance, he was employed by D.L. Pimper to work as a stockbroker and solicit securities transactions or brokerage services. He sought to transfer $20,000,000 of accounts which he serviced while an employee of D.L. Pimper. The nonsolicitation covenant seeks only to enjoin Covington for a period of 12 months from contacting, communicating with or otherwise soliciting, with a view to sell or provide securities or brokerage service competitive with those sold while in D.L. Pimper's employ, only those accounts with whom Covington had contact during the two years prior to his termination.
Singer v. Habif, Arogeti & Wynne, P.C.[11] is inapposite. Not only does Singer never mention the phrase "communicate with," but the covenant in Singer was deemed unreasonable, in part, because it prohibited the former employee from soliciting any client of his former employer, not simply clients with whom the former employee had contact.[12] In the present case, Covington is prohibited only from soliciting clients or prospective clients of D.L. Pimper, or representatives of clients or prospective clients of D.L. Pimper, with whom Covington had contact during a two-year period. Based on the record before this Court, we cannot say that the trial court's granting of injunctive relief on this ground is clearly erroneous.[13]
3. Because both the noncompete and the nonsolicit covenants are enforceable, it is unnecessary to determine whether the restrictive covenants in this agreement may be blue-penciled.[14]
Judgment affirmed.
RUFFIN and ELLINGTON, JJ., concur.
NOTES
[1] (Citations omitted.) Wilson v. Sermons, 236 Ga. 400, 223 S.E.2d 816 (1976); see Parker v. Clary Lakes Recreation Assn., 272 Ga. 44, 45, 526 S.E.2d 838 (2000).
[2] OCGA § 9-5-8; see Chaffin v. Calhoun, 262 Ga. 202, 204, 415 S.E.2d 906 (1992).
[3] Id.; Wilson, supra.
[4] (Citations omitted.) Ledbetter Bros., Inc. v. Floyd County, 237 Ga. 22, 23(2), 226 S.E.2d 730 (1976).
[5] Reardigan v. Shaw Indus., 238 Ga.App. 142, 143(1), 518 S.E.2d 144 (1999).
[6] They do not argue that the covenant is overbroad in either its duration or its territorial coverage.
[7] 234 Ga.App. 833, 834-835(2), 508 S.E.2d 191 (1998).
[8] See Habif, Arogeti & Wynne, P.C. v. Baggett, 231 Ga.App. 289, 294-297(2)(c), 498 S.E.2d 346 (1998).
[9] 262 Ga. 464, 422 S.E.2d 529 (1992).
[10] Id.
[11] 250 Ga. 376, 297 S.E.2d 473 (1982).
[12] Id. at 377-378(1), 297 S.E.2d 473.
[13] See Wright, supra at 835-837(3), 508 S.E.2d 191.
[14] See Baggett, supra at 297-298(3), 498 S.E.2d 346.