## 69393. LANE COMPANY v. TAYLOR.

(330 SE2d 112)

BEASLEY, Judge.

Plaintiff appeals from an order granting defendant's motion for summary judgment on its claim and the denial of its motion for partial summary judgment as to defendant's counterclaim.

Lane Company (Lane) was engaged in the management of apartment complexes throughout the nation. Norma Taylor was employed by Lane from November 1977 until April 15, 1983. At first she served as an apartment manager and then became a property manager in charge of several apartment projects. Shortly after becoming a property manager, she was required to execute an employment agreement which included the following provisions: "1. During the term of Employee's employment by Employer and for a period of one (1) year following the termination of such employment for any reason whatsoever, Employee will not (1) except in the ordinary course of the performance of duties on behalf of and to the benefit of Employer and only as necessary to perform such duties or (2) without prior written consent of Employer: (i) Use, disseminate, disclose, lecture upon or publish (collectively "Disclose"), directly or indirectly, the name or names of, or any list or lists of, past or current customers of Employer or utilize such names or lists for Employee's own personal advantage. (ii) Disclose, directly or indirectly, any information acquired by Employee from Employer relating to Employer's methods of doing business, price structures, systems of operation, "know-how", documents, records, forms or any other confidential information. (iii) Contact directly or indirectly, for purposes of competing directly or indirectly or aiding another to so compete with the business of Employer any current customer of Employer whose name was divulged to him by or through his employment with Employer or whose name or trade was obtained by him for Employer. (iv) Hire or attempt to hire for any other employer any employee of Employer or directly or indirectly cause any such employee to leave his employment in order to work for another. 2. Each of the provisions of subparagraphs (i), (ii), (iii), and (iv) of paragraph 1 above shall be independent and severable from the others and if any such provision be for any reason held illegal, invalid or unenforceable in whole or in part, said illegality, invalidity or unenforceability shall not affect the validity or enforceability of any other provision of this Agreement."

In 1983 Taylor indicated dissatisfaction with her job to officers of Lane. In April, after giving notice, she left to accept a position with Bay Management Company, a real estate management business. Shortly thereafter three apartment projects managed by Lane and with which Taylor had been associated when she worked with Lane, switched to Bay and became Taylor's responsibility with that con-

cern. About this time, the manager of one of the apartment projects and other employees of Lane left and began work with Bay.

As a result, Lane brought an action against Taylor in four counts alleging that: 1) defendant by her actions violated the restrictive covenants of the employment agreement; 2) defendant made promises to plaintiff with no present intention to perform such promises and thereby defrauded plaintiff; 3) defendant owed plaintiff a duty of loyalty and good faith and acted wrongfully and in bad faith; 4) defendant wilfully and maliciously interfered with plaintiff's contractual relations. Plaintiff sought various damages allegedly resulting from defendant's wrongful acts.

Defendant answered, denying the material averments of the complaint, and counterclaimed for earnings which she contended plaintiff owed her. The counterclaim was subsequently amended to add counts two through five, addressed to plaintiff's counts one through four seriatim. Each count of the counterclaim contained basically the same allegations: that the employment agreement on which plaintiff relies is void as in restraint of trade; that plaintiff wrongfully brought Count I (or II, III or IV) when it knew or should have known the agreement was void and unenforceable; that plaintiff has continued to prosecute the count and has abused the court's process; that plaintiff continued its complaint and prosecution of the count to intimidate and harass defendant because she left its employ, not for the reasons alleged; that plaintiff brought and continued that count, even though it knew or should have known the employment agreement was void and unenforceable, to make an example of defendant no matter how much it cost so that other employees of plaintiff would be intimidated by the threat of a similarly expensive and distressing lawsuit and would comply with this agreement though unenforceable; that plaintiff has and will continue to wrongfully and unlawfully use the court process to achieve an ulterior purpose the law never intended. The counterclaim sought damages resulting from plaintiff's allegedly wrongful, malicious and improper abuse of process.

The case proceeded through extensive discovery and both sides filed motions for summary judgment which came on for hearing. The trial court entered two orders. The first denied plaintiff's motion for partial summary judgment addressed to counts two through five of the counterclaim which sought recovery for plaintiff's malicious abuse of process. The court found "that there remains substantial material issues of fact as to whether plaintiff abused the legal processes by attempting to make an example of the defendant in order to keep its other employees in check and distract the defendant from her new job."

The trial court's second order granted defendant's motion to all four counts of the complaint. The first count was found defective in

that subparagraph (iii) of the employment agreement contained no territorial limitation and the entire agreement was thus void and unenforceable. As to Count two (fraud), the record was found not to sustain the allegations and the contract "the pillar of plaintiff's allegation" regarding fraud, was void ab initio. The third court (breach of duty of loyalty) was not sustainable "based on the court's holding" as to Count one. The fourth count, based on malicious interference with contractual relations, fell because the court held: "Inherent in the offense of contractual interference is the element of malice, i.e., an 'intention to harm another . . . an act by one who, from knowledge of the interests of another, knows this will interfere with them.' *Architectural Manufacturing Company v. Airotec, Inc. et al.*, 119 Ga. App. 245, 250 (1969). The uncontroverted evidence of Plaintiff's former customers reveal that the Defendant did not contact them in attempt to pirate them away from Plaintiff . . . Indeed, the record is devoid of any evidence that the Defendant attempted to damage the business of Plaintiff. It has been recognized under Georgia law that '[m]erely to persuade a person to break his contract may not be wrongful in law or fact . . . [only if] the persuasion be used for the indirect purpose of injuring the plaintiff, or of benefiting the defendant at the expense of the plaintiff.' "

Plaintiff Lane in its appeal enumerates three errors, but we do not consider the third ground because it raises an issue not addressed by the trial court. *Held*:

1. Although counsel for Lane proffers several ingenious means by which this court can avoid the controlling authority of the Supreme Court, we must follow the mandate of Art. VI, Sec. VI, Par. VI of the Georgia Constitution.

As succinctly stated in *Guffey v. Shelnut & Assoc.*, 247 Ga. 667, 670 (278 SE2d 371) (1981): "Although a covenant prohibiting solicitation of the employer's customers is less restrictive than a covenant prohibiting competition, both must specify the territory in which the employee is to be foreclosed." Here subparagraph (iii) is void and unenforceable since there is no territorial limitation.

2. There can be no "blue pencil theory" of severability of covenants not to compete even where there is a severability clause (see *Richard P. Rita Personnel Services v. Kot*, 229 Ga. 314, 317 (191 SE2d 79) (1972); *Howard Schultz & Assoc. v. Broniec*, 239 Ga. 181, 185 (236 SE2d 265) (1977)), but this does not mean that provisions (ii) and (iv) must of necessity suffer the same fate as (iii). "A claim for breach of covenant not to compete and one for wrongful disclosure and use of confidential information in violation of contract may be maintained separately and independently under the same or distinct provisions of the employment agreement." *Durham v. Stand-By Labor*, 230 Ga. 558, 562 (198 SE2d 145) (1973). Accord *Howard Schultz*

& *Assoc. v. Broniec*, 239 Ga. 181, 186 (4), supra; *Kloville, Inc. v. Kinsler*, 239 Ga. 569, 570 (238 SE2d 344) (1977). This is also true of covenants not to interfere with employment contracts, i.e., by hiring away employees of one's former employer. *Harrison v. Sarah Coventry, Inc.*, 228 Ga. 169, 171 (184 SE2d 448) (1971).

a) In *Durham v. Stand-By Labor*, 230 Ga. 558, 563, supra, it was noted: "Unlike general noncompetition provisions, however, specific nondisclosure clauses bear no relation to territorial limitations and their reasonableness, turns on factors of time and the nature of the business interest sought to be protected." The court then posited two important factors: "(1) whether the employer is attempting to protect confidential information relating to the business, such as trade secrets, methods of operation, names of customers, personnel data, and so on — even though the information does not rise to the stature of a trade secret; and (2) whether the restraint is reasonably related to the protection of the information." The court held that a jury question was presented concerning the legitimacy of the need to maintain the confidentiality of the information in question.

In *Nasco, Inc. v. Gimbert*, 239 Ga. 675, 676 (3) (238 SE2d 368) (1977) there was "a covenant against disclosure of 'any information concerning any matters affecting or relating to the business of employer' including but not limited to the identity of any of employer's customers, its prices (including the prices at which it sells its products), and its production, manufacturing, sales promotion and merchandising methods and systems." That nondisclosure covenant was found to be "overly broad and unreasonable in that it would prohibit disclosure of information not needed for the protection of the employer's legitimate business interests." P. 676.

Here the contract describes "methods of doing business, price structures, systems of operation, "know-how," documents, records, forms or any other confidential information."

The reference to confidential has the effect of modifying the terms used in the sentence so that they are not overly broad but severely limited to only those methods, documents, forms, etc., which were confidential. So construed, as in *Durham v. Stand-By Labor*, supra, a jury question was presented as to the legitimacy of the need to maintain such confidentiality and whether the information fitted the description. Since this was on motion for summary judgment it was incumbent on defendant, as movant to establish the absence of disclosure, or in short, that there was no disclosure of confidential information. The proof in this regard failed to establish, as a matter of law, either that no confidential information was disclosed or that any confidential information was disclosed. Hence, summary judgment as to this issue was unauthorized.

b) The subparagraph regarding "pirating" of employees states:

"hire or attempt to hire for another employer any employee of Employer or directly or indirectly cause any such employee to leave his employment in order to work for another."

In *Orkin Exterminating Co. v. Martin Co.*, 240 Ga. 662, 666 (242 SE2d 135) (1978), the Supreme Court announced: "Overly-restrictive covenants in employment contracts . . . which place a restraint upon the free movement of employees in the marketplace as opportunity, experience and competition permits is contrary to this court's view of fair competition."

The language of this subparagraph is circumscribed by a one-year limitation, and it restricts only the actions of the property manager. The covenant is not too broad in its scope to sustain a finding that it was needed to protect legitimate business interests. *Harrison v. Sarah Coventry, Inc.*, 228 Ga. 169 (1) supra. Summary judgment was erroneously granted with regard to subparagraph (iv).

3. We next focus on plaintiff's right to bring an action for interference with its employment relations. "Interference with contract has long been an actionable wrong in Georgia. [Cits.] 'The malicious procurement of a breach of contract of employment, resulting in damage, where the procurement was during the subsistence of the contract, is an actionable wrong.' [Cit.]" *Nasco, Inc. v. Gimbert*, 239 Ga. 675, 677 (5), supra. Accord *Harrison v. Sarah Coventry, Inc.*, 228 Ga. 169, 171, supra.

"In opposing a motion for summary judgment it is not necessary for the plaintiff to produce sufficient evidence to show that the plaintiff is entitled to the relief sought." *Wall v. Ga. Farm Bureau Mut. Ins. Co.*, 238 Ga. 275 (232 SE2d 555) (1977). The movant for summary judgment (here defendant Taylor) has the burden to produce evidence which conclusively eliminates all issues in a case, even those issues upon which the opposing party (here plaintiff Lane) would have the trial burden. *Burnette Ford, Inc. v. Hayes*, 227 Ga. 551, 552 (181 SE2d 866) (1971). Moreover, the party opposing the motion is given the benefit of all reasonable doubts and favorable inferences which may be drawn from the evidence. *Colonial Stores v. Turner*, 117 Ga. App. 331, 333 (160 SE2d 672) (1968). Even though "the plaintiff's evidence proves nothing or . . . the evidence is concededly 'in equipoise' does not carry the defendant's burden." *Sealy v. Western Broadcasting of Columbus*, 168 Ga. App. 493, 495 (309 SE2d 633) (1983). The defendant failed to meet her burden of showing conclusively there was no malicious interference with plaintiff's employment agreements.

Consequently, it was error to grant summary judgment as to Count four.

4. The trial court granted summary judgment on Count two dealing with fraud primarily because the contract "which is the pillar of

plaintiff's allegations of fraud" was void.

However, in Division 2. a) of this opinion the nondisclosure covenant was found not to be void.

Since fraud is itself subtle, the combination of several circumstances may constitute proof of fraud. *Grainger v. Jackson*, 122 Ga. App. 123, 127 (176 SE2d 279) (1970). The defendant argues that her witnesses testified positively that there was no fraud, conspiracy or plan on her part. She then urges the application of the rule that a fact which may be inferred but is not demanded by circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists. *Ussery v. Koch*, 115 Ga. App. 463 (1a) (154 SE2d 879) (1967); *Brewer v. Southeastern &c. Ins. Co.*, 147 Ga. App. 562, 564 (249 SE2d 668) (1978).

In *Fletcher Emerson &c. Co. v. Davis*, 134 Ga. App. 699, 702 (215 SE2d 725) (1975), it was pointed out that the rule is inapplicable to a situation, such as here, where the circumstantial evidence is not perfectly consistent with the testimony of the witness but is most certainly "inconsistent." Here there is evidence that: after the defendant left her employment with the plaintiff, three major apartment projects formerly managed by plaintiff terminated their relations and contracted with Bay for management and these became the responsibility of defendant; defendant and the officers/owner of Bay had meetings prior to this happening; defendant talked with employees of plaintiff who left to join Bay; forms, documents, and management techniques of plaintiff were being utilized by defendant for her new employer.

*McCurry v. Bailey*, 224 Ga. 318, 319 (162 SE2d 9) (1968) is controlling authority for the proposition that when circumstances from which a jury may infer a certain fact conflicts with direct evidence that such fact was untrue, a jury question is presented and summary judgment is not proper. Anything contrary to that rationale found in *Ussery v. Koch*, supra, or *Brewer v. Southeastern &c. Ins. Co.*, supra, must yield to that paramount authority. There remains a jury question as to fraud involving the issues as to disclosure of unauthorized information, subparagraph (ii), and hiring away employees of Lane, subparagraph (iv). It was error to dismiss all of Count two.

5. Summary judgment as to Count three involving a claim for breach of loyalty was granted on the basis of the trial court's holding the restrictive covenants of the employment agreement were unenforceable.

Defendant had duties with her former employer, plaintiff, which included supervision and hiring of on-site apartment managers, marketing the properties, preparing budgets for each property's operation dealing with residents of the apartment, establishing rental and renewal rates.

The difference between a master-servant and principal-agent relation is that the former deals with matters of manual or mechanical execution while the latter relates to business or commercial transactions. *Southeastern Fidelity Ins. Co. v. Heard*, 123 Ga. App. 635, 639 (182 SE2d 153) (1971). Essentially an agent has authority to establish contractual relations with third parties and his principal. Id. at 639.

Treated as an agent, defendant owed plaintiff the duty of loyalty and absolute good faith. *Napier v. Adams*, 166 Ga. 403 (143 SE 566) (1928). If an agent fails to use his best skill and judgment to promote the interest of his principal, he is liable in damages for a violation of the trust owed. *Larkins v. Boyd*, 205 Ga. 69 (52 SE2d 307) (1949); *Clyde Chester Realty Co. v. Stansell*, 151 Ga. App. 357 (259 SE2d 639) (1979).

Since loyalty to his principal is the agent's primary obligation, if the agent, as a fiduciary, obtains any advantage or profit out of the relation which injures his principal he becomes a trustee. *Smith v. Merck*, 206 Ga. 361, 368 (57 SE2d 326) (1950). Moreover, even if defendant be classified as a servant, there still remains the duty of loyalty, faithful service and regard for the employer's interests. See 53 AmJur2d 170, Master & Servant, § 97.

The facts outlined above, in conjunction with those in the previous division, are sufficient to require reversal of the grant of defendant's motion for summary judgment as to Count three.

6. Defendant Taylor's counterclaim based on an alleged malicious abuse of process requires consideration of the distinction between an action for malicious use of process and an action for malicious abuse of process. The rationale for the distinction rests on the practical proposition that if the cause is predicated on malicious use of process it cannot be the basis of a counterclaim because the action may terminate favorably to the initial claimant, and therefore could not have been unlawful. *Canal Ins. Co. v. Cambron*, 240 Ga. 708, 716 (7) (242 SE2d 32) (1978). " '[T]he law is inflexible in its specific requirement that in an action for damages for the malicious use of civil process three essential elements must appear, to wit: (1) Malice. (2) Want of probable cause. (3) The proceeding complained of has terminated in favor of the defendant before an action for damages is instituted.' [Cit.]" *American Plan Corp. v. Beckham*, 125 Ga. App. 416 (3) (188 SE2d 151) (1972).

While some opinions of this court have broadly pronounced that damages for both malicious use and abuse of process cannot be recovered by counterclaim in the trial of the same action,[1] the sounder rule

---

[1] *Terry v. Wonder Seal Co.*, 120 Ga. App. 423 (2) (170 SE2d 745) (1969); *Outlaw v. Transit Homes*, 145 Ga. App. 695, 698 (2) (244 SE2d 633) (1978); *Capitol City Roofing v. Wentz*, 165 Ga. App. 699, 700 (2) (300 SE2d 322) (1983).

is that, under the right circumstances, a claim for malicious abuse of process is not per se excluded and may be asserted by counterclaim. *Medoc Corp. v. Keel*, 152 Ga. App. 684 (263 SE2d 543) (1979).

Simply stated, " 'Malicious abuse of legal process is where the plaintiff in a civil proceeding wilfully misapplies the process of the court in order to obtain an object which such a process is not intended by law to effect, as contra-distinguished from malicious use of process, where the plaintiff in a civil proceeding employs the court's process in order to execute an object which the law intends such a process to subserve, but proceeds maliciously and without probable cause.' [Cits.]" *Dantley v. Burge*, 88 Ga. App. 478, 479 (77 SE2d 107) (1953).

A detailed examination of the principles inherent in malicious abuse of process is found in *Davison-Paxon Co. v. Walker*, 174 Ga. 532, 536 (163 SE 212) (1931). "The distinctive nature of an action for malicious abuse of process, as compared with an action for malicious prosecution, is that it lies for the improper use of process after it has been issued, not for maliciously causing it to issue . . . 'It would seem to be only when process is perverted, i.e., directed outside of its lawful course to the accomplishment of some object other than that for which it is provided, that one, acting upon probable and reasonable cause, may yet become liable for so misusing the process as to be guilty of an abuse thereof. And to constitute such improper direction of process, the mere existence of an ulterior motive in doing an act proper in itself does not suffice, but there must be such a use of it as is in itself without the scope of the process and improper, . . . It would seem both from authority and reason that to sustain the action these two elements are essential: (1) the existence of an ulterior motive, and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge. The first of these elements may, perhaps, be inferred from the second, but the existence of the first can not, in reason, dispense with proof of the second; for if the act of the prosecution be in itself regular, the motive ulterior or otherwise, is immaterial.' " See *Landers v. Ga. &c. Commission*, 217 Ga. 804, 811 (6) (125 SE2d 495) (1962).

In a more recent decision this court grappled with the critical elements necessary to sustain a counterclaim based on malicious abuse of process. *Medoc Corp. v. Keel*, 152 Ga. App. 684, supra. The allegations of the counterclaim were that plaintiff maliciously abused civil process by "wrongfully bringing" suit against the defendant and "continued" to pursue the main action against the defendant. This court opined: "If 'bringing and continuing' a lawsuit stated a claim for malicious abuse of process, the defendant in every pending case could turn it into a damage suit against the plaintiff for having merely brought the action in the first instance. If a defendant wished to seek

relief against a plaintiff on the basis of what amounted to an inchoate malicious *use* of process cause of action, he could utilize the otherwise unavailable procedural vehicle of counterclaim simply by denominating his claim as one for malicious *abuse* of process. Every person with a grievance would have to weigh the possibility that he might become a 'defendant' to a counterclaim for malicious abuse of process simply because he chooses to litigate his own claim in court; the filing of every complaint would be grounds for a potential malicious abuse of process counterclaim.' " *Medoc Corp. v. Keel*, 152 Ga. App. 684, 687, supra.

The facts found by the trial court as tending to sustain defendant's counterclaim are not sufficient. In *Pair v. Southern Bell Tel. &c. Co.*, 149 Ga. App. 149, 151 (253 SE2d 828) (1979), it was averred that defendant brought a prior suit in an attempt to wilfully collect an "outlawed debt" and to intimidate plaintiff to pay it. This court held that such conclusions, which at most showed motive, did not raise a genuine issue of material fact.

Here, as in so many cases, there is evidence proving a malicious motive and an ulterior purpose. But there is a total absence of acts which amount to a perversion of legal process to some unlawful purpose.

Any defendant might be "distracted by a lawsuit," while the other alleged purpose was not directed against defendant but to keep plaintiff's other employees in check. Here the act of prosecution was regular and the motive behind it may serve as a basis for malicious use of process if the action terminates favorably to defendant, but it would not fall within the second category of an act not proper in the regular course of the proceeding. *Thomas v. Ronald A. Edwards Constr. Co.*, 163 Ga. App. 202, 205 (3) (293 SE2d 383) (1982); *Leiphart Chevrolet v. Ewing*, 163 Ga. App. 416, 418 (2) (295 SE2d 128) (1982).

In sum, the trial court correctly granted summary judgment as to Count one except as to those portions of the contract providing for non-disclosure of confidential information, subparagraph (ii), and the hiring away of Lane employees, subparagraph (iv). As to Count two it was error to sustain summary judgment insofar as the count alleged fraud regarding the non-disclosure and hiring away provisions. It was error to grant defendant's motion for summary judgment as to Counts three and four of the complaint. The denial of plaintiff's motion for partial summary judgment addressed to Counts two, three, four and five of the counterclaim was error.

*Judgments affirmed in part; reversed in part. Carley, J., concurs. Birdsong, P. J., concurs in the judgment only.*

DECIDED MARCH 14, 1985 —
REHEARING DENIED MARCH 29, 1985 — 

*Warren W. Wills, Paul H. Arne,* for appellant.
*Alfred A. Lindseth,* for appellee.