A05A0272, A05A0273. PALMER & CAY OF GEORGIA, INC. v. LOCKTON COMPANIES, INC. et al.; and vice versa.

(615 SE2d 752)

ANDREWS, Presiding Judge.

Palmer & Cay, defendants below, and Lockton Companies, JTL Consulting, Douglas Hutcherson, John Varner, Jr., and Philip Holley (collectively "Lockton"), plaintiffs below, appeal from the trial court's denial in part and grant in part of their motions for summary judgment. At issue was an employment contract signed by the individual plaintiffs which contained four restrictive covenants: two nonsolicitation of customers covenants, a nonsolicitation of employees covenant, and a nondisclosure covenant. The trial court struck down the two nonsolicitation of customers covenants as overbroad, but upheld the nonsolicitation of employees and nondisclosure covenants. For the following reasons, we affirm.

This case arose when Hutcherson, Varner, and Holley left their jobs at Palmer & Cay, a professional services firm providing insurance and employee benefits services, to work for Lockton, a competitor. They filed this declaratory judgment action seeking clarification of their obligations under their employment contract with Palmer & Cay, specifically the four restrictive covenants listed above.

As stated, the trial court upheld two of the covenants and struck down two. In Case No. A05A0272, Palmer & Cay appeals from the trial court's determination that the two nonsolicitation of customers covenants are overbroad. In Case No. A05A0273, Lockton appeals from the court's determination that the nonsolicitation of employees and nondisclosure covenants are enforceable.

### Case No. A05A0272

The two nonsolicitation of customers covenants at issue in this case provide that for a period of two years after leaving the company:

> The Employee will not, in any way, directly or indirectly, except as an employee of the Company, solicit, divert, or take away, or attempt to solicit, divert or take away, the insurance or employee benefit plan business of any of the customers of the Company which were served by the Employee during the term of his employment with the Company, or any prospective customers of the Company which the Employee solicited for the Company within one year prior to his termination of employment, for the purpose of selling to or servicing for any such customer or prospective customer any insurance or

employee benefit product or service which was provided or offered by the Company during his employment; and

The Employee will not, directly or indirectly, cause or attempt to cause any of the foregoing customers or prospective customers of the Company to refrain from maintaining or acquiring from or through the Company any insurance or employee benefit plan product or service which was provided or offered by the Company during his employment, and will not assist, directly or indirectly, any other person or persons to do so. . . .

The trial court found this nonsolicitation agreement to be overbroad for three reasons. First, the court held that it prohibited the employees from servicing or selling to a client of the company a product that the employee never sold or serviced while employed by the company; for instance, employee benefit plans. Second, the employees were prohibited from contacting clients regardless of how long it had been since they sold to these clients and regardless of whether that client had severed its relationship with the company in the interim. Third, the court found the covenant to be overbroad because it prohibited the employee from servicing or selling to the company's clients a product that the company may no longer offer.

In reviewing the trial court's ruling, we note that "[w]hether the restraint imposed by the employment contract is reasonable is a question of law for determination by the court." *W. R. Grace & Co. v. Mouyal*, 262 Ga. 464, 465 (422 SE2d 529) (1992). And, on appeal, this Court reviews rulings on questions of law de novo. *Tachdjian v. Phillips*, 256 Ga. App. 166, 168 (568 SE2d 64) (2002).

Georgia courts have traditionally applied close scrutiny to employment contracts containing restrictive covenants and have upheld them only when the covenant is strictly limited in time, territorial effect, and activities prohibited. *Beckman v. Cox Broadcasting Corp.*, 250 Ga. 127, 129 (296 SE2d 566) (1982).

While a contract in general restraint of trade or which tends to lessen competition is against public policy and is void (1983 Ga. Const., Art. III, Sec. VI, Par. V (c); OCGA § 13-8-2), a restrictive covenant contained in an employment contract is considered to be in partial restraint of trade and will be upheld if the restraint imposed is not unreasonable, is founded on a valuable consideration, and is reasonably necessary to protect the interest of the party in whose favor it is imposed, and does not unduly prejudice the interests of

the public. Whether the restraint imposed by the employment contract is reasonable is a question of law for determination by the court, which considers the nature and extent of the trade or business, the situation of the parties, and all the other circumstances. A three-element test of duration, territorial coverage, and scope of activity has evolved as a helpful tool in examining the reasonableness of the particular factual setting to which it is applied.

(Citations and punctuation omitted.) *W. R. Grace & Co.*, supra at 465.

Here, the agreement prohibits the employees from soliciting for business any customer of the company that they served during their employment. Hutcherson, Varner and Holley were with Palmer & Cay for periods of five, ten, and eleven years, respectively. The employees argued below that a covenant with no geographic restriction and no limitation on the type of product or service that may be provided, which also prohibits them from doing business with a customer that they may have served 11 years ago, is overbroad. We agree.

In a similar case, *Gill v. Poe & Brown &c.*, 241 Ga. App. 580 (524 SE2d 328) (1999), this Court struck down a clause prohibiting the employee from soliciting any customers for a period of 18 months after terminating employment. The court found that the covenant applied to a list of customers created over four years before the employee left the job; therefore, the employer had no legitimate business interest in preventing the employee's solicitation of clients who may have long since severed their relationship with the employer. Id. at 583.

Likewise, the covenant at issue here provides no time restriction, and the length of time is considerably longer than the four years disapproved of in *Gill*. On the other hand, this Court has upheld employment agreements which limit the time of customer contact to a certain period before the termination of employment. See, e.g., *W. R. Grace*, supra at 464 (restricting the solicitation of customers to those with whom the employee had contact during the last two years of his employment); *Covington v. D. L. Pimper Group*, 248 Ga. App. 265, 268 (546 SE2d 37) (2001) (employee could not solicit those customers with whom employee had contact during last two years with the company); *Wright v. Power Indus. Consultants*, 234 Ga. App. 833, 835 (508 SE2d 191) (1998) (approving nonsolicit covenant for twelve-month period immediately prior to termination), overruled on other grounds, *Advance Technology Consultants v. RoadTrac, LLC*, 250 Ga. App. 317, 320-321 (551 SE2d 735) (2001).

Moreover, the cases cited by Palmer & Cay in support of its appeal are not persuasive. The cases upon which Palmer & Cay relies

were decided prior to those we rely upon here and prior to *W. R. Grace* and its progeny. See *Waldeck v. Curtis 1000, Inc.*, 261 Ga. App. 590, 593 (583 SE2d 266) (2003).

Accordingly, we hold this nonsolicit clause is overbroad and unenforceable. Further, the trial court correctly held that both nonsolicit clauses were unenforceable. "[I]n restrictive covenant cases strictly scrutinized as employment contracts, Georgia does not employ the 'blue pencil' doctrine of severability." *Advance Technology Consultants,* supra at 320. Therefore, if one nonsolicit clause is unenforceable, they are all unenforceable. Id.

### Case No. A05A0273

In this case, Lockton argues that the trial court erred in upholding the nonsolicitation of employees clause and the nondisclosure clause in the employment agreement. Both nonsolicitation of employees clauses and nondisclosure clauses in employment agreements are analyzed separately from nonsolicit clauses and noncompete clauses dealing with clients of the former employer. See *Mathis v. Orkin Exterminating Co.*, 254 Ga. App. 335, 337 (562 SE2d 213) (2002); *Durham v. Stand-By Labor &c.*, 230 Ga. 558, 562-563 (198 SE2d 145) (1973).

1. The nonsolicitation of employees covenant provides that, for two years after leaving the company, "the Employee will not, directly or indirectly, attempt in any manner to cause or otherwise encourage any employee of the Company to leave the employ of such corporation." The trial court found this covenant was enforceable because it contained language almost identical to covenants previously upheld by this Court. Lockton argues that this clause is overbroad because it lacks a territorial restriction, prohibits solicitation of employees that the plaintiff employees never met, and prohibits encouraging employees to leave regardless of the reason.

As to the lack of a territorial restriction, "[r]equiring an express geographic territorial description in all cases is not in keeping with the reality of the modern business world in which an employee's 'territory' knows no geographic bounds, as the technology of today permits an employee to service clients located throughout the country and the world." *W. R. Grace*, supra at 467. The type of business at issue in this case, selling insurance and employee benefit plans, is the type of business which has no geographic bounds.

In contrast, *Hulcher Svcs. v. R. J. Corman R. Co.*, 247 Ga. App. 486, 492 (543 SE2d 461) (2001), relied on by Lockton, involved a specific geographic territory. The business at issue was emergency

disaster remediation services for railroads and the employee worked solely in Georgia and Florida, and in parts of Tennessee and Kentucky.

Likewise, *Capricorn Systems v. Pednekar*, 248 Ga. App. 424, 427 (546 SE2d 554) (2001), is not persuasive. Although that case is silent as to the type of work performed by the employee and whether it was specific to a certain territory, the covenant at issue was a very broad one and provided against soliciting other employees, business opportunities, or clients, regardless of whether the employees had ever worked with those clients. Id. at 427.

Lockton also claims the covenant is overbroad because it prohibits solicitation of employees the brokers never met and regardless of the reason for the solicitation. Lockton cites to no case law in support of this argument and we find none.

Moreover, there are numerous cases upholding covenants with similar language. See, e.g., *Harrison v. Sarah Coventry, Inc.*, 228 Ga. 169, 170 (184 SE2d 448) (1971) ("nor will [employee] on his/her behalf or on the behalf of any other person or company, solicit or in any manner attempt to induce Sarah Coventry's salespeople or employees to leave the company"); *Sanford v. RDA Consultants*, 244 Ga. App. 308, 309 (535 SE2d 321) (2000) (employee agreed "not to attempt to employ or assist any other person in employing or soliciting for employment any employee employed by RDA"); *Wright*, supra at 839 (employee prohibited from directly or indirectly causing any employee to leave his employment to work for another); *U3S Corp. of America v. Parker*, 202 Ga. App. 374, 376 (414 SE2d 513) (1991) (employee " 'will not solicit or in any manner encourage employees of the Company to leave the employ of the Company' "); *Lane Co. v. Taylor*, 174 Ga. App. 356 (330 SE2d 112) (1985) (employee will not " '[h]ire or attempt to hire for any other employer any employee of Employer or directly or indirectly cause any such employee to leave his employment in order to work for another' ").

2. Next, Lockton argues the trial court erred in concluding that the nondisclosure covenant was enforceable. The nondisclosure agreement provides in pertinent part that, "for a period of two years, the Employee will not divulge . . . or make accessible to any person or entity . . . the names of customers or any information contained in the customer's accounts."

Unlike noncompete covenants, "when a duty has been imposed upon an employee pursuant to contract not to disclose confidential business information upon termination of employment, public policy is swung in favor of protecting these commercial intangibles and of preventing unfair methods of exploiting them in breach of duty." *Durham*, supra at 563.

> Covenants not to disclose and utilize confidential business information are related to general covenants not to compete because of the similar employer interest in maintaining competitive advantage. Unlike general noncompetition provisions, however, specific nondisclosure clauses bear no relation to territorial limitations and their reasonableness turns on factors of time and the nature of the business interest sought to be protected. In determining whether restraints on disclosure are reasonable, two factors are of importance: (1) whether the employer is attempting to protect confidential information relating to the business, such as trade secrets, methods of operation, names of customers, personnel data, and so on — even though the information does not rise to the stature of a trade secret; and (2) whether the restraint is reasonably related to the protection of the information.

(Citations omitted.) Id. at 563-564.

Lockton argues that customer lists are not confidential information. But, the employees, by signing the employment agreement, acknowledged that names of customers are considered confidential business information and "constitute[ ] valuable, special and unique property of the Company." See *Wiley v. Royal Cup, Inc.*, 258 Ga. 357, 359-360 (370 SE2d 744) (1988) (employee acknowledged in his employment contract that names of customers constitute confidential information).

Nor do we find *Wolff v. Protege Systems*, 234 Ga. App. 251 (506 SE2d 429) (1998) or *Nasco, Inc. v. Gimbert*, 239 Ga. 675 (238 SE2d 368) (1977), cited by Lockton, persuasive. See *Physician Specialists &c. v. MacNeill*, 246 Ga. App. 398, 408 (539 SE2d 216) (2000), which upheld a nondisclosure clause similar to the instant one and distinguished both *Wolff* and *Nasco*.

Further, "customer lists and customer information which have been compiled by firms represent a material investment of employers' time and money." *Durham*, supra at 564. This Court has followed *Durham* numerous times and upheld covenants prohibiting the employee from using or divulging customer and client lists. See, e.g., *Lee v. Environmental Pest & Termite Control*, 271 Ga. 371, 373-374 (516 SE2d 76) (1999); *Wiley*, supra; *Physician Specialists*, supra at 408; *U3S Corp.*, supra at 377; *Lane*, supra at 359.

Therefore, for the reasons discussed above, the trial court did not err in upholding the nonsolicitation of employees and nondisclosure covenants. Accordingly the trial court correctly denied in part and granted in part both parties' motions for summary judgment.

*Judgments affirmed. Phipps and Mikell, JJ., concur.*

DECIDED APRIL 28, 2005 —
RECONSIDERATION DENIED JUNE 3, 2005 — 

*Bondurant, Mixson & Elmore, Michael B. Terry, Timothy S. Rigsbee*, for appellant.

*Rogers & Hardin, Hunter R. Hughes III, Ashley R. Hurst, Parker, Hudson, Rainer & Dobbs, Ronald T. Coleman, Jr., Paul, Hastings, Janofsky & Walker, William K. Whitner*, for appellees.