S05G1629. PALMER & CAY OF GEORGIA, INC. v. LOCKTON COMPANIES, INC. et al.
(629 SE2d 800)

CARLEY, Justice.

As employees of Palmer & Cay of Georgia, Inc. (P&C), Douglas Hutcherson, John Varner, and Philip Holley (Employees) signed a covenant which provided that, for a two-year period after leaving their employment, they would

> not, in any way, directly or indirectly, except as an employee of the Company, solicit, divert, or take away, or attempt to solicit, divert or take away, the insurance or employee benefit plan business of any of the customers of the Company which were served by the Employee during the term of his employment with the Company, or any prospective customers of the Company which the Employee solicited for the Company within one year prior to his termination of employment, for the purpose of selling to or serving for any such customer or prospective customer any insurance or employee benefit product or service which was provided or offered by the Company during his employment . . . .

After voluntarily leaving their employment with P&C and accepting positions with a competitor, Lockton Companies, Inc. (Lockton), the Employees and Lockton (Appellees) filed a declaratory judgment action to determine the enforceability of the nonsolicitation covenant. The trial court found that the covenant was not enforceable. On appeal, the Court of Appeals affirmed that holding, concluding that the covenant is unenforceable because it "provides no time restriction [on the Employees' provision of services to P&C's customers] . . . ." *Palmer & Cay of Ga. v. Lockton Cos.*, 273 Ga. App. 511, 513 (615 SE2d 752) (2005).

We granted certiorari to determine whether the Court of Appeals correctly held that the covenant was unenforceable due to the lack of any restriction placed on the period of time during which the Employees had served P&C's customers.

1. The covenant does not broadly prohibit the solicitation of all of P&C's customers. Its scope is narrowly limited to only those customers of P&C who were served by the Employees during their respective terms of employment. Previously, this Court has upheld such covenants prohibiting the post-termination solicitation of a former employer's customers for a reasonable period, without regard to when the former employee may have had contact with those customers. See *Wiley v. Royal Cup*, 258 Ga. 357 (370 SE2d 744) (1988); *Marcoin, Inc. v. Waldron*, 244 Ga. 169 (259 SE2d 433) (1979). As exemplified by those cases, the critical factor is whether the former employee ever served the customer, not the length of time since he or she may have done so. " '[A] court will enforce an agreement prohibiting an employee from pirating his former employer's customers served by the employee during the employment, at the employer's direct or indirect expense. . . .' [Cit.]" *Wiley v. Royal Cup*, supra at 359 (1).

> [T]he employer has a protectible interest in the customer relationships its former employee established and/or nurtured while employed by the employer ([cit.]), and is entitled to protect itself from the risk that a former employee might appropriate customers by taking unfair advantage of the contacts developed while working for the employer. [Cits.]

*W.R. Grace & Co. v. Mouyal*, 262 Ga. 464, 466 (2) (422 SE2d 529) (1992). The employer's recognized interest in protecting its customers is not diminished by the length of time since the employee may have ceased to serve the customer, but depends instead on the fact that the customer relationship was either established or nurtured by the employee. This is true because the risk that a former employee

may take unfair advantage of personal contacts developed in establishing or nurturing the customer relationship still exists even after such direct and immediate contacts have ended.

Thus, P&C "had a legitimate business interest to protect in preventing [Employees] from leaving and encouraging clients to leave with [them]." *Marcoin, Inc. v. Waldron*, supra at 171 (2). Consistent with our prior cases, P&C sought to protect that interest by limiting, for a two-year post-termination period, the solicitation by the Employees of only those customers of P&C whom they served during the term of their employment.

2. In support of its holding that the covenant is nevertheless unenforceable, the Court of Appeals concluded that any decision which predates *W.R. Grace & Co.*, supra, is unpersuasive authority. There, this Court was called upon to answer a certified question from the Eleventh Circuit as to whether a covenant which prohibited an employee from soliciting clients of his former employer whom he actually contacted during his tenure was enforceable in Georgia notwithstanding the absence of an express geographical limitation. *W.R. Grace & Co. v. Mouyal*, supra at 464-465. Thus, "[t]he focus of [that] case [was] the absence of an express geographic description of the territorial restriction contained in the no-solicitation clause of the employment contract." *W.R. Grace & Co. v. Mouyal*, supra at 465 (2). Accordingly, the Court of Appeals misinterpreted *W.R. Grace & Co.* as authority for the entirely distinct proposition that a nonsolicitation covenant must provide an express limit on the time within which the employee actually provided services to the former employer's customers. Geographic and temporal limitations are not equivalents. Indeed, to the extent that *W.R. Grace & Co.* may be applicable here, it cited with approval prior cases which had recognized the existence of an employer's protectible interest in those customers who were served by a former employee and the concomitant right to protect against the risk that unfair advantage might be taken of those contacts. *W.R. Grace & Co. v. Mouyal*, supra at 466 (2).

Appellees correctly point out that the covenant in *W.R. Grace & Co.* was limited in its scope to those customers with whom the employee had contact in the two-year period prior to termination of his employment. That the covenant in that case may have contained such a limitation, as a matter of fact, does not, however, support the conclusion that, as a matter of law, every covenant must likewise contain a temporal limitation. To the contrary, by its express terms, *W.R. Grace & Co.*, supra at 465, fn. 1, notes that its holding addresses the enforceability of a restrictive covenant which is as broad as that set forth in the certified question, rather than one which was as limited as that provided in the actual employment contract.

Where the parameters of the restrictive covenant are as narrow as those set forth in the certified question, i.e., where the former employee is prohibited from post-employment solicitation of employer customers which the employee contacted during his tenure with the employer, there is no need for a territorial restriction expressed in geographic terms.

*W.R. Grace & Co. v. Mouyal*, supra at 467-468 (2). Thus, *W.R. Grace & Co.* is not a departure from any of our prior cases which recognize that, when dealing with a covenant that prohibits the solicitation of customers whom the employee served, the entire length of service of the employee establishes the permissible temporal boundary. Had the intent been to hold that a lesser time limit on the former employee's contact with the customer was required, this Court would have overruled, not reaffirmed, prior cases which recognize the employer's unqualified interest in protecting its customers who were served by the former employee.

3. The Court of Appeals also relied on *Gill v. Poe & Brown of Ga.*, 241 Ga. App. 580 (524 SE2d 328) (1999). In that case,

the covenant applie[d] to customers on a list created over four years before Gill was terminated. Although the covenant provided that the list of Gill's customers could be amended, it is undisputed that this was never done. The fact that Gill's employer had already lost the business of some of the customers on this list at the time of Gill's termination illustrates the problems created by a covenant that forbids an employee from soliciting a stagnant list of customers. Gill's employer had no legitimate business interest in preventing Gill's solicitation of former clients who may have severed their relationship with it up to four years before Gill's termination.

*Gill v. Poe & Brown of Ga.*, supra at 582-583 (2).

P&C does not rely on a comparable "stagnant list" to protect any of its "former clients." According to its unambiguous terms, the covenant applies to P&C's "customers," not its "former customers." "[T]he plain meaning of the term 'clients' is current, existing clients and . . . the term does not, without a modifier such as 'former' or 'future,' encompass all clients past, present, or future. [Cits.]" *C&L Indus. v. Kiviranta*, 698 NW2d 240, 249 (IV) (2) (a) (i) (Neb. App. 2005). The passage of time since an employee last served his former

employer's current customers is obviously an entirely different consideration from the length of time that has passed since the employer lost a customer. Thus, *Gill* has no bearing on the resolution of this case.

The dissent, p. 485, points out that "[t]he restriction contains no territorial limitation whatsoever." Although that is true, it is not significant, since where, as here,

> the former employee is prohibited from post-employment solicitation of employer customers which the employee contacted during his tenure with the employer, *there is no need for a territorial restriction expressed in geographic terms.* (Emphasis supplied.)

*W.R. Grace & Co. v. Mouyal,* supra at 468 (2).

The dissent further urges that *W.R. Grace & Co. v. Mouyal* is distinguishable because there, unlike here, "the covenant restricted the employee only from soliciting customers contacted by the employee within the two-year window preceding the conclusion of employment." Dissent, p. 486. Again, however, that is simply a factual difference without a legal distinction. " '[A] court will enforce an agreement prohibiting an employee from pirating his former employer's *customers served by the employee during the employment,* at the employer's direct or indirect expense.' " (Emphasis supplied.) *Wiley v. Royal Cup,* supra at 359 (1). As previously noted, *W.R. Grace & Co. v. Mouyal,* supra at 465, fn. 1, expressly recognized that the restrictive covenant in that case was "more narrow than the certified question as it is applicable only to those clients and prospects contacted by [the employee] *during the last two years of his employment with [the employer].*" (Emphasis in original.) Nevertheless, the actual holding in *W.R. Grace & Co. v. Mouyal,* supra at 467-468 is that a restrictive covenant with terms "as those *set forth in the certified question*" is enforceable in Georgia. (Emphasis supplied.) Thus, it is clear that *W.R. Grace & Co. v. Mouyal* cannot be distinguished on the basis that the covenant there contained a temporal limitation on employee's contact with the employer's customers.

The dissent, p. 487, ultimately justifies its position by asserting that "[t]he business climate in this state is ill served by, in essence, penalizing the long-term service of an employee." To the contrary however, this state's business climate would be adversely affected if the courts were to refuse to uphold a freely negotiated agreement pursuant to which an employer sought to protect itself from post-termination piracy of only those of its customers whom a former employee had actually served during his period of employment.

*[T]he employer has a protectible interest in the customer relationships its former employee established and/or nurtured while employed by the employer* ([cit.]), and is entitled to protect itself from the risk that a former employee might appropriate customers by taking unfair advantage of the contacts developed while working for the employer. [Cits.] (Emphasis supplied.)

*W.R. Grace & Co. v. Mouyal,* supra at 466 (2).

There is no legal basis for the judiciary to interfere in the affairs of the workplace, and to set aside a restrictive covenant which, for a reasonable two-year period, limits a former employee from engaging in the post-termination solicitation of any of his former employer's customers whom he personally served during his tenure of employment. There is no question that the covenant in this case was bargained for by P&C and was freely accepted by Employees. It does not become unenforceable because it does not include a time restriction on the Employees' provision of services to P&C's customers.

4. The trial court found the "nonsolicitation agreement to be overbroad for three reasons." *Palmer & Cay of Ga. v. Lockton Cos.,* supra at 512. In affirming the trial court, the Court of Appeals addressed only the lack of any restriction placed on the period of time during which the Employees had served P&C's customers. The conclusion that the covenant was unenforceable for that reason was based upon an erroneous interpretation of our holding in *W.R. Grace & Co.* and a misapplication of the holding in *Gill.* Accordingly, the judgment of the Court of Appeals is reversed and the case is remanded for further consideration not inconsistent with this opinion.

*Judgment reversed and case remanded with direction. All the Justices concur, except Hines, J., who dissents.*

HINES, Justice, dissenting.

Under clear Georgia precedent, the covenant regarding nonsolicitation of customers at issue in this case is overbroad, and therefore, unenforceable. Accordingly, I respectfully dissent.

Inasmuch as a restrictive covenant contained in an employment contract is in partial restraint of trade, it is to be upheld only if the restraint imposed is reasonable, founded on valuable consideration, reasonably necessary to protect the interest of the party in whose favor it is imposed, and does not unduly prejudice the interests of the public. *W.R. Grace & Co. v. Mouyal,* 262 Ga. 464, 465 (1) (422 SE2d 529) (1992). In addressing the question of reasonableness, a court should consider duration, territorial coverage, and scope of activity subject to the restrictions. Id.

In this case, the trial court found the nonsolicitation agreement to be overbroad because it prohibited the employees from servicing or selling to a company client a product that the employee never sold or serviced while employed by the company; because it prohibited the employee from servicing or selling to the company's clients a product that the company might no longer offer; and because the employees were prohibited from contacting clients regardless of how long it had been since they sold to these clients and regardless of whether the clients had severed their relationships with the company in the interim. *Palmer & Cay of Ga. v. Lockton Cos.*, 273 Ga. App. 511, 512 (615 SE2d 752) (2005). In finding the breadth of the restriction unreasonable, the Court of Appeals focused on the fact that the employees were prohibited, without limitation either by geography or product or service type, from soliciting and doing business with any customer they had served during the entire terms of their employment. This was especially significant in this case because the three workers were long-term employees, serving the company for five, ten, and eleven years, respectively. Yet, a majority of this Court concludes that the restriction is "narrowly limited" because it addresses "only those customers of [the company] who were served by the [e]mployees during their respective terms of employment." However, the restriction is anything but narrow.

The restriction contains no territorial limitation whatsoever. Generally, a territorial limitation, specified with particularity, helps to provide the employee with notice of what constitutes a violation of the restrictive covenant. *W.R. Grace & Co. v. Mouyal*, supra at 465 (2), citing *Wiley v. Royal Cup*, 258 Ga. 357, 358 (370 SE2d 744) (1988); *Fuller v. Kolb*, 238 Ga. 602, 604 (234 SE2d 517) (1977). The reasonableness of the restriction is heavily dependent upon the facts and circumstances surrounding the case, and in determining reasonableness, consideration must be given to the employee's right to earn a living and the employee's ability to determine with certainty the area within which his or her post-employment actions are restricted. *W.R. Grace & Co. v. Mouyal,* supra at 466 (2). However, in responding to a certified question from the United States Court of Appeals for the Eleventh Circuit in *W.R. Grace & Co. v. Mouyal,* this Court rightly acknowledged that to require an express geographic territorial description in every case does not square with the reality of the modern business world in which an employee's "territory" is not bounded by geography, as modern technology makes possible the servicing of clients located throughout the country and the world. Id. at 467 (2). This Court then concluded that where the parameters of the restrictive covenant were as narrowly drawn as those set forth in that case,

as addressed by the certified question, there was no need for a territorial restriction expressed in geographic terms. Id. at 467-468 (2).

But in *W.R. Grace & Co. v. Mouyal*, unlike the present case, the employee was prohibited from soliciting or contacting any customer or prospect of the company with a view to the sale or provision of any product, equipment or service competitive or potentially competitive with any product, equipment or service sold or provided or under development by the company *during the two years immediately preceding cessation of the employee's employment with the company.* Thus, the covenant restricted the employee only from soliciting customers contacted by the employee within the two-year window preceding the conclusion of employment. In the present case, there is no such temporal limitation to mitigate the severity of the restraint on the employee's right to a livelihood.

Regardless of the majority's assertion to the contrary, *Gill v. Poe & Brown of Ga.*, 241 Ga. App. 580 (524 SE2d 328) (1999), is directly on point. In that case, it was determined that the employer did not have a legitimate business interest in preventing the employee's solicitation of former clients who might have severed their relationship with the employer up to four years before the employee's termination. Id. at 583 (2). Thus, the nonsolicitation agreement was held to be an unreasonable partial restraint of trade. Id. at 580. The majority tries to distinguish *Gill* from the present case by stating that "P&C does not rely on a comparable 'stagnant list' to protect any of its 'former clients.' " But the existence of a "list," or rather the lack thereof in the present case, is irrelevant. The point is that to prohibit the employees from business contact with those with whom the employer may have long ceased doing business fails to serve any legitimate business interest of the employer. In the present case, it strains credibility to conclude that P&C has a legitimate business interest in barring a former employee from soliciting and doing any business whatsoever with a customer the employee had served more than a decade prior to termination of employment with P&C.

The majority cites *Wiley v. Royal Cup*, supra, and *Marcoin, Inc. v. Waldron*, 244 Ga. 169 (259 SE2d 433) (1979), for its pivotal conclusion that "the critical factor is whether the former employee ever served the customer, not the length of time since he or she may have done so." But neither case supports such a proposition. In fact, the cases are inapposite; both involved restrictive covenants containing express territorial limitations. Even so, this Court struck down the restrictive covenant at issue in *Wiley v. Royal Cup* because the overbroad territorial limitation did not serve a legitimate business interest of the employer, and therefore, was unreasonable. Id. at 359 (1).

Certainly, an employer has a protectible interest in the customer relationships its former employee established and/or nurtured while employed by the employer, and is entitled to shield itself from the risk that a former employee might attempt to appropriate such customers by virtue of the contacts developed while working for the employer. *W.R. Grace & Co. v. Mouyal*, supra at 466 (2). But the measures that the employer uses to protect itself from such risk must be reasonably necessary to accomplish that goal. *W.R. Grace & Co. v. Mouyal*, supra at 465 (1). That is not the case here.

There must be a judicial balancing between the interests of the employer and that of the employee. *W.R. Grace & Co. v. Mouyal*, supra at 466 (2). Otherwise, the economic environment is compromised. The business climate in this state is ill served by, in essence, penalizing the long-term service of an employee. Unfortunately, the majority, without legal basis, has done so.

DECIDED MAY 8, 2006.

*Bondurant, Mixson & Elmore, Michael B. Terry, Timothy S. Rigsbee*, for appellant.

*Paul, Hastings, Janofsky & Walker, William K. Whitner, Rogers & Hardin, Hunter R. Hughes III, Ashley R. Hurst*, for appellees.